# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

LANELL PIERCY, WILLA G. WARD, THOMAS L. MAZZEO, SUE RUSH, CATHERINE SCHLOSS, PATRICIA TATE-JACKSON, and DARLENE WILSON, individually and as representatives on behalf of a class of similarly situated persons,

        Plaintiffs,

    v.

AT&T INC., AT&T SERVICES, INC., THE BENEFIT PLAN INVESTMENT COMMITTEE, PASCAL DESROCHES, GEORGE GOEKE, DEBRA DIAL, WILLIAM HAMMOND, JULIANNE GALLOWAY, STATE STREET GLOBAL ADVISORS TRUST CO., and DENISE R. SISK,

        Defendants.

Civil Action No. 1:24-cv-10608-NMG

*Consolidated with*
*Civil Action No. 1:24-cv-10656-NMG*

Leave to file granted on
February 3, 2025

## REPLY MEMORANDUM OF LAW IN SUPPORT OF AT&T DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

Meaghan VerGow (*pro hac vice*)
Brian D. Boyle (*pro hac vice*)
Shannon M. Barrett (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006-4001
Tel: (202) 383–5300
Fax: (202) 383–5414
mvergow@omm.com
bboyle@omm.com
sbarrett@omm.com

William Pollak (*pro hac vice*)
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 326–2000
wpollak@omm.com

Ian D. Roffman, BBO# 637564
Mark C. Jensen, BBO# 646662
NUTTER, McCLENNEN & FISH LLP
155 Seaport Blvd.
Boston, MA 02210
Tel: (617) 439–2000
Fax: (617) 310–9000
iroffman@nutter.com
mjensen@nutter.com

*Counsel for Defendants AT&T Inc., AT&T Services, Inc., the Benefit Plan Investment Committee, and Pascal Desroches, George Goeke, Debra Dial, William Hammond, and Julianne Galloway*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................3

I.     Plaintiffs have not plausibly alleged Article III standing. .....................................3

       A.     Plaintiffs have failed to plead a cognizable injury in fact under the principles applied by the Supreme Court in *Thole*. ..................................3

       B.     Plaintiffs' "alternative" theories of harm are insufficiently alleged and legally meritless. ...........................................................................................4

              1.     Plaintiffs' assertion that the "value" of their pension benefits was "immediately" harmed is legally flawed. ...........................4

              2.     Plaintiffs' argument that they have inherent standing to sue for fiduciary breach flies in the face of black-letter law. ........................6

              3.     Plaintiffs misapprehend the role of ERISA § 502(a)(9). .....................7

              4.     Plaintiffs' allegations do not establish a "substantial risk" of Athene's imminent default or a substantial probability of harm. ......................................................................................8

II.     Plaintiffs have failed to plausibly plead a fiduciary breach claim against the AT&T Defendants in Counts I–III. ...............................................................10

       A.     Plaintiffs do not plausibly allege that the AT&T Defendants had fiduciary responsibility for the selection of Athene in Count I. ......................10

       B.     Plaintiffs do not plausibly plead a claim for fiduciary breach based on the selection of SSGA in Count III. ...................................................12

       C.     Plaintiffs' allegations do not plausibly establish that the AT&T Defendants are liable as co-fiduciaries or non-fiduciaries in Counts I-II. ..............................................................................................13

III.     Plaintiffs have failed to plausibly plead any prohibited transaction claims against the AT&T Defendants in Counts V–VII. .....................................14

       A.     The hiring of SSGA was not a prohibited transaction (Count V). ................14

       B.     Count VI fails because the agreement to purchase annuities from Athene was not a prohibited transaction. ...........................................16

       C.     Plaintiffs also fail to allege a claim under ERISA § 406(b) in Count VII. .......................................................................................17

       D.     Plaintiffs are unable to defend their failure to monitor claim (Count X). ...........................................................................................18

**TABLE OF CONTENTS**
**(continued)**

Page

E.      All claims against the Individual Defendants should be dismissed. ................18

IV.    Plaintiffs' objection to "extrinsic material" is a red herring. ..........................19

CONCLUSION .................................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Acosta Orellana v. CropLife Int'l,*
711 F. Supp. 2d 81 (D.D.C. 2010) ............................................................................................14

*Alas v. AT&T Inc.,*
2019 WL 1744847 (C.D. Cal. Feb. 25, 2019) .........................................................................19

*Beddall v. State St. Bank & Tr. Co.,*
137 F.3d 12 (1st Cir. 1998) .....................................................................................................19

*Bennett v. Spear,*
520 U.S. 154 (1997).................................................................................................................7

*Chambliss v. CareFirst, Inc.,*
189 F. Supp. 3d 564 (D. Md. 2016) ........................................................................................8

*Cho v. Prudential Ins. Co. of Am.,*
2021 WL 4438186 (D.N.J. Sept. 27, 2021) ...........................................................................19

*Clapper v. Amnesty Int'l,*
568 U.S. 398 (2013).................................................................................................................8

*Cognex Corp. v. Air Hydro Power, LLC,*
651 F. Supp. 3d 322 (D. Mass. 2023) .....................................................................................5

*Coriale v. Xerox Corp.,*
775 F. Supp. 2d 583 (W.D.N.Y. 2011)....................................................................................18

*Cunningham v. Cornell Univ.,*
86 F.4th 961 (2d Cir. 2023), *cert. granted*, No. 23-1007, 2024 WL 4394127 (U.S.
Oct. 14, 2024) .........................................................................................................................16

*D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.,*
88 F.4th 602 (5th Cir. 2023) ........................................................................................... 14, 15

*Daly v. W. Monroe Partners,*
2023 WL 2525362 (N.D. Ill. 2023)........................................................................................19

*David v. Alphin,*
704 F.3d 327 (4th Cir. 2013).............................................................................................. 7, 10

*Duncan v. Muzyn,*
885 F.3d 422 (6th Cir. 2018)...................................................................................................10

*Flores v. OneWest Bank, F.S.B.,*
886 F.3d 160 (1st Cir. 2018) ...................................................................................................19

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Forgione v. Gaglio,*
 2015 WL 718270 (S.D.N.Y. Feb. 13, 2015) ...................................................................................19

*Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.,*
 493 U.S. 331 (1990)...........................................................................................................................5

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.,*
 530 U.S. 238 (2000).........................................................................................................................15

*Hughes Aircraft Co. v. Jacobson,*
 525 U.S. 432 (1999).................................................................................................................. 11, 15

*In re Fid. ERISA Fee Litig.,*
 990 F.3d 50 (1st Cir. 2021) .............................................................................................................19

*In re WorldCom, Inc.,*
 263 F. Supp. 2d 745 (S.D.N.Y. 2003).............................................................................................20

*Itzhaki v. U.S. Liab. Ins. Co.,*
 536 F. Supp. 3d 651(C.D. Cal. 2021) .............................................................................................20

*James v. Cox,*
 2022 WL 2905367 (D. Mass. July 22, 2022)..................................................................................14

*Katz v. Pershing, LLC,*
 672 F.3d 64 (1st Cir. 2012) ......................................................................................................... 4, 5

*Kayes v. Pac. Lumber Co.,*
 51 F.3d 1449 (9th Cir. 1995).............................................................................................................8

*Kerin v. Titeflex Corp.,*
 770 F.3d 978 (1st Cir. 2014) .............................................................................................................8

*Larson v. Allina Health Sys.,*
 350 F. Supp. 3d 780 (D. Minn. 2018)..............................................................................................13

*Liberty Life Assurance Co. v. Stone St. Cap. Inc.,*
 93 F. Supp. 2d 630 (D. Md. 2000).....................................................................................................5

*Liberty Mut. Ins. Co. v. Aftermath Servs. LLC,*
 2023 WL 5435878 (D. Mass. Aug. 23, 2023) .................................................................................12

*Lockheed v. Spink,*
 517 U.S. 882 (1996).........................................................................................................................15

*Luca McDermott Catena Gift Tr. v. Fructuoso-Hobbs SL,*
 102 F.4th 1314 (Fed. Cir. 2014) ........................................................................................................5

TABLE OF AUTHORITIES
(continued)

Page

*Luense v. Konica Minolta Bus. Sols. U.S.A.,*
541 F. Supp. 3d 496 (D.N.J. 2021) ...................................................................19

*Merrimon v. Unum Life Ins. Co. of Am.,*
758 F.3d 46 (1st Cir. 2014) ................................................................................6

*Nat'l Ass'n of Gov't Emps., Inc. v. Yellen,*
120 F.4th 904 (1st Cir. 2024).............................................................................10

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,*
513 U.S. 251 (1995)............................................................................................16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
693 F.3d 145 (2d Cir. 2012) ...............................................................................5

*New Orleans ILA Pensioners Ass'n v. Bd. of Trs. of New Orleans Emps. Int'l Longshoremen's
Ass'n AFL-CIO Pension Fund,*
2008 WL 215654 (E.D. La. Jan. 24, 2008) .......................................................10

*OfficeMax Inc. v. Cnty. Qwick Print, Inc.,*
709 F. Supp. 2d 100 (D. Me. 2010) ...................................................................5

*Pender v. Bank of Am. Corp.,*
788 F.3d 354 (4th Cir. 2015)..............................................................................6

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,*
489 F.3d 1279 (D.C. Cir. 2007) .........................................................................8

*Ramos v. Banner Health,*
1 F.4th 769 (10th Cir. 2021) ....................................................................... 15, 16

*Reddy v. Foster,*
845 F.3d 493 (1st Cir. 2017) ..............................................................................8

*RFF Fam. P'ship, LP v. Link Dev., LLC,*
849 F. Supp. 2d 131 (D. Mass. 2012) ...............................................................5

*Riva v. Massachusetts,*
61 F.3d 1003 (1st Cir. 1995) ..............................................................................5

*Shurkin v. Golden State Vintners Inc.,*
471 F. Supp. 2d 998 (N.D. Cal. 2006).............................................................13

*Smith v. L.A. Unified Sch. Dist.,*
830 F.3d 843 (9th Cir. 2016)..............................................................................20

## TABLE OF AUTHORITIES
### (continued)

Page

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)......................................................................................................7

*State Farm Mut. Auto. Ins. Co. v. Comm'r*,
698 F.3d 357 (7th Cir. 2012)........................................................................................20

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)......................................................................................................8

*Tassinari v. Salvation Army Nat'l Corp.*,
610 F. Supp. 3d 343 (D. Mass. 2022) .........................................................................13

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020)...........................................................................................1, 3, 6, 7

*Tracey v. Mass. Inst. of Tech.*,
2017 WL 4453541 (D. Mass. Aug. 31, 2017) .............................................................20

*Tracey v. Mass. Inst. of Tech.*,
404 F. Supp. 3d 356 (D. Mass. 2019) ....................................................................16, 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)......................................................................................................7

*Turner v. Schneider Elec. Holdings, Inc.*,
530 F. Supp. 3d 127 (D. Mass. 2021) ....................................................................15, 16

*U.S. Tr. Co. of N.Y. v. New Jersey*,
431 U.S. 1 (1977)..........................................................................................................5

## STATUTES

29 U.S.C. § 1002(14)........................................................................................................14

29 U.S.C. § 1105(a)(2)......................................................................................................13

29 U.S.C. § 1106(a)...........................................................................................................14

29 U.S.C. § 1108................................................................................................................15

29 U.S.C. § 1132(a)(9)........................................................................................................7

ERISA § 206(d)(1)...............................................................................................................5

ERISA § 3(14) ............................................................................................................14, 15

ERISA § 3(14)(B) .......................................................................................................15, 16

**TABLE OF AUTHORITIES**
(continued)

Page

ERISA § 3(14)(E)........................................................................................................................14

ERISA § 405(a)(1)......................................................................................................................14

ERISA § 408(a)..........................................................................................................................17

ERISA § 408(b)(17)...................................................................................................................16

ERISA § 408(b)(2).....................................................................................................................15

**OTHER AUTHORITIES**

139 Cong. Rec. S 9874 (July 29, 1993).......................................................................................8

89 Fed. Reg. 23090-01..............................................................................................................16

89 Fed. Reg. 32302-01..............................................................................................................17

# INTRODUCTION[1]

Plaintiffs lack standing to challenge a transaction that admittedly has caused them no harm and poses no imminent risk of harm. Plaintiffs concede that they have received every penny of their pension benefit payments without interruption or delay, and that they remain entitled to the same stream of payments in the future whether they win or lose this lawsuit. They therefore cannot demonstrate a constitutionally sufficient injury in fact, just like the plaintiffs in *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020).

Unable to identify any diminution of *what* they will be paid, Plaintiffs suggest they are harmed by *who* is making those payments, analogizing to cases involving improper delegations under contract law. But those cases equally require a showing of actual injury and reject the suggestion that the transfer of an undiminished payment obligation creates an injury on its own. Plaintiffs likewise cannot clear Article III by claiming that the annuity transaction has diminished the "market value" of their pension benefits. The benefits have no "market value" because they cannot be bought or sold, and Plaintiffs' rights to payment remain what they were before the transaction.

Plaintiffs' fallback argument—speculation that their pension payments might be impaired at some distant point in the future if a series of far-fetched events befall Athene—is likewise insufficient to establish standing. To plead a cognizable imminent harm, Article III requires Plaintiffs to allege "a substantial probability" that the insurer faces an "imminent" default. Mot. 8. That is the risk that Congress sought to address in enacting ERISA § 502(a)(9), and Plaintiffs have not come close to meeting that standard. Indeed, Plaintiffs' Opposition gives this issue away by characterizing their allegations as merely "establish[ing] Athene's *comparative* risk" relative to other

---

[1] This reply refers to Plaintiffs' Opposition to Defendants' Motion to Dismiss (Dkt. 91) as "Opp." or "Opposition"; and to the AT&T Defendants' Memorandum of Law in Support of their Motion to Dismiss (Dkt. 76) as "Mot." or "Motion." Unless otherwise indicated, all emphasis is added, internal quotations and citations are omitted, and defined terms have the same meaning as in AT&T's Motion.

insurers. Opp. 24 (emphasis in original). That assertion says nothing about the substantial *absolute* probability that Athene will default in the near future. And even if Plaintiffs had alleged a risk of imminent default (they don't), Plaintiffs acknowledge that their pension benefits are protected by multiple layers of security, including a separate account shielded from Athene's creditors with sufficient assets to cover all of Plaintiffs' future pension payments. Plaintiffs do not raise a single concern about that separate account, focusing their allegations entirely on supposed investment risks in Athene's general account—allegations that themselves fail on their own terms. At every step, Plaintiffs' allegations fall short of demonstrating imminent harm.

Plaintiffs similarly cannot redeem their claims on the merits. Plaintiffs fail to state a claim for fiduciary breach against the AT&T Defendants for the selection of Athene because the Complaint itself recognizes that SSGA, not the AT&T Defendants, made that decision. In their Opposition, Plaintiffs assert it was enough that the AT&T Defendants elected to proceed with the annuitization transaction after SSGA selected Athene, but the law is clear that the decision to annuitize is a settlor decision that cannot support a claim of fiduciary breach. Mot. 7. And while Plaintiffs separately challenge the selection of SSGA as independent fiduciary due to its management of investments in Athene's parent company on behalf of its index fund clients, they do not dispute that SSGA likewise manages investments in Athene's competitors. Plaintiffs have identified no reason a prudent fiduciary would have nixed SSGA and therefore cannot sustain that claim of imprudence either.

Nor can Plaintiffs salvage their prohibited transaction claims. Among other flaws, ERISA only prohibits certain transactions with "parties in interest," and Plaintiffs' assertion that SSGA and Athene had "prior commercial relationships" with the AT&T Defendants fits neither of those entities within the detailed statutory definition of that term. Plaintiffs also do not plead, as they must, *nonexempt* prohibited transactions likely to injure the plan, which are all ERISA forbids.

Finally, Plaintiffs' inability to identify specific conduct by any of the Individual Defendants

requires dismissing all claims against them. The most that Plaintiffs can muster is the allegation that these individuals served on the Benefit Plan Investment Committee. That alone is legally insufficient and particularly so in this case, where Plaintiffs have sued the wrong committee (and, by extension, the wrong committee members).

With their primary theories stripped bare, Plaintiffs resort to complaining that the AT&T Defendants have introduced materials beyond the Complaint. In fact, the cited materials—like the Commitment Agreement effectuating the transaction—are incorporated by reference or otherwise properly consulted on a motion to dismiss. But the issue is immaterial because the Complaint on its own establishes that Plaintiffs have neither alleged standing nor pleaded facts plausibly establishing ERISA violations. Dismissal of all claims against the AT&T Defendants should follow.

## ARGUMENT

### I.    Plaintiffs have not plausibly alleged Article III standing.

#### A.    Plaintiffs have failed to plead a cognizable injury in fact under the principles applied by the Supreme Court in *Thole*.

Like the plaintiffs in *Thole*, Plaintiffs here have received every penny of their pension benefit payments to date and remain entitled to the exact same stream of payments in the future.[2] Because "[w]inning or losing this suit w[ill] not change the plaintiffs' monthly pension benefits," under the rule of *Thole*, "plaintiffs have no concrete stake in this dispute and therefore lack Article III standing." 590 U.S. at 547. Nothing in the Opposition draws this conclusion into question.

Plaintiffs offer to reinterpret *Thole*, suggesting that the Supreme Court held that the *Thole* "plaintiffs lacked standing because . . . they *remained inside* the defined benefit plan." Opp. 19–20 (emphasis in original). They contend that *Thole* thus does not apply here because "Defendants

---

[2] Contrary to Plaintiffs' suggestion, the AT&T Defendants never set out a blanket rule that Article III requires "a realized pocketbook injury." *See* Opp. 15, 19. While other types of non-monetary injuries can establish standing, that principle is irrelevant here because Plaintiffs have not alleged that they suffered any non-monetary harm.

ejected Plaintiffs from the Plan, extinguishing their right to . . . ERISA's protective regime[.]" *Id.* But Plaintiffs point to no language or reasoning within *Thole* supporting that novel argument. And it is in any event misplaced: The departure of participants from a plan, and the end of ERISA governance, is the inevitable result of *any* pension risk transfer.[3] Plaintiffs would have been "ejected from the Plan" regardless of which annuity provider SSGA selected. *Id.* And it is well established that the decision to engage in a pension risk transfer is a settlor decision, not a fiduciary act. *See* Mot. 7 (collecting cases). Because Plaintiffs' loss of ERISA's protections did not turn on the choice of annuity provider—the only fiduciary conduct subject to challenge—that purported loss cannot qualify as cognizable harm, nor can it justify a departure from *Thole. See, e.g.*, *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012) ("Plaintiff must show a sufficiently direct causal connection between the challenged action and the identified harm.").

**B.    Plaintiffs' "alternative" theories of harm are insufficiently alleged and legally meritless.**

Unable to point to any actual, bona fide loss, Plaintiffs try to manufacture other interests that purportedly give them the requisite stake to satisfy Article III. None of these is supportable.

**1.    Plaintiffs' assertion that the "value" of their pension benefits was "immediately" harmed is legally flawed.**

Plaintiffs first argue that they have standing because the transaction "diminished the value of Plaintiffs' benefits . . . because an interest in annuity payments from Athene is worth substantially less than an interest in pension benefits from the Plan." Opp. 16. However, the notion that the market value of Plaintiffs' stream of future benefit payments has been diminished rests on the faulty premise that there is a market for pension benefits. To the contrary, pension benefits cannot be bought or sold on the open market, as ERISA flatly prohibits beneficiaries from transferring their

---

[3] As the Complaint and Opposition both acknowledge, ERISA expressly permits PRTs and provides that ERISA ceases to govern the benefit obligations owed to the former plan participants following a PRT. Compl. ¶ 2; Opp. 27.

pension benefits, and the annuities that resulted from the transaction are likewise non-transferable. Mot. 13; *see* ERISA § 206(d)(1). Thus, Plaintiffs' pension payments necessarily do not have a cognizable "market value" that could have been impaired as a result of the pension risk transfer.

Plaintiffs' analogy to cases involving transferable and tradeable assets are therefore easily distinguished.[4] Defined benefit pension payments are a far cry from marketable securities (*Franchise Tax*; *NECA-IBEW*), bonds (*U.S. Tr. Co.*), real estate (*RFF Fam.*), or intellectual property (*Luca McDermott*). With such readily transferable interests, the concept of a "market value" has independent meaning and provides a rational baseline for making inferences (and proving) bona fide injuries.[5] Not so with Plaintiffs' non-transferable and non-tradeable pension payments.

Plaintiffs' reliance on cases addressing improper delegations of contractual obligations is equally mistaken. *See* Opp. 18 & n.5. None of the cases they cite held that a party to a contract necessarily has standing whenever a counterparty delegates responsibility to a different entity with a different risk profile.[6] And while certain contracts prohibit delegation or assignment (and this limitation may be enforced by a counterparty), that context is lacking here as the Plan specifically permitted both amendment and annuitization of Plaintiffs' pension payments. Galloway Decl. Ex. D §§ 19.1–19.2. Annuitization thus did not invade any of Plaintiffs' purported rights.

---

[4] *See* Opp. 17 (citing *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331 (1990); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012); *U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1 (1977); *RFF Fam. P'ship, LP v. Link Dev., LLC*, 849 F. Supp. 2d 131 (D. Mass. 2012); *Luca McDermott Catena Gift Tr. v. Fructuoso-Hobbs SL*, 102 F.4th 1314 (Fed. Cir. 2014)).

[5] For example, this Court found that a "property owner . . . has standing to contest . . . a mortgage encumbering its property . . . because the encumbrance directly impacts the property's marketability and value." *RFF*, 849 F. Supp. 2d at 136; *see also Franchise Tax*, 493 U.S. at 336 (Corporation had standing to challenge tax that "cause[d] actual financial injury to [plaintiff] by illegally reducing the return on their investments [] and by lowering the value of their stockholdings."); *U.S. Tr.*, 431 U.S. at 19 ("[T]he market price for [] bonds [held by plaintiff] was adversely affected[.]").

[6] *Liberty Life Assurance Co. v. Stone Street Capital Inc.*, 93 F. Supp. 2d 630 (D. Md. 2000), *Riva v. Massachusetts*, 61 F.3d 1003 (1st Cir. 1995), and *OfficeMax Inc. v. County Qwick Print, Inc.*, 709 F. Supp. 2d 100 (D. Me. 2010), do not even involve an Article III standing analysis. *See* Opp. 18 & n.5 (citing cases). And in *Katz*, the First Circuit held that the plaintiff *lacked* Article III standing. 672 F.3d at 64. The final case cited by Plaintiffs is easily distinguished—in *Cognex Corp. v. Air Hydro Power, LLC*, 651 F. Supp. 3d 322 (D. Mass. 2023), the plaintiff was directly injured by incurring the costs to defend a suit in an inconvenient forum in violation of a forum selection clause. *Cognex* has no bearing on the standing analysis here.

Plaintiffs peddle such analogies because they cannot cite a single case accepting their standing theory in the context of a defined benefit plan. But there is no need to stretch principles from disparate and entirely inapplicable areas of law because the Supreme Court has already addressed this precise situation in *Thole. Supra*, Part I.A. Indeed, if Plaintiffs were correct that some speculative increase in future risk of performance could be recast as a diminution in "present value" of that performance, then every one of the Supreme Court's leading standing cases would have reached a different result.

> **2.      Plaintiffs' argument that they have inherent standing to sue for fiduciary breach flies in the face of black-letter law.**

Plaintiffs next advance the theory that they have standing merely because they have asserted a breach of fiduciary duty—regardless of whether they have alleged economic loss. Opp. 21–22. This argument, too, is foreclosed by *Thole*, which also involved claims for fiduciary breach.

Plaintiffs cite two cases in support of their assertion—*Merrimon v. Unum Life Insurance Co. of America*, 758 F.3d 46, 53 (1st Cir. 2014), and *Pender v. Bank of America Corp.*, 788 F.3d 354, 365–67 (4th Cir. 2015)—but both were abrogated by *Thole* (and by *TransUnion* and *Spokeo* before it). The courts of appeals in *Merrimon* and *Pender* each looked to the common law of trusts to conclude that plaintiffs could bring claims for wrongful retention and misuse of assets even though they purportedly received everything to which they were entitled under their plans.[7] But the Supreme Court subsequently rejected this trust-based theory of standing in the precise circumstances present here. *Thole*, 590 U.S. at 542–43. The Court explained that "[t]he basic flaw in the . . . trust-based theory of standing is that the participants in a defined-benefit plan are not similarly situated to the

---

[7] *Pender* is also distinguishable because the court ultimately found that the plaintiffs suffered an "individual loss," measured as the difference between the amount the plan sponsor earned from funds attributable to participants' individual assets and the amount actually paid to the participants. 788 F.3d at 367. That is, the *Pender* court found that the plaintiffs had not received all of the benefits that they were legally entitled to receive due to the unique nature of the defined-contribution plan at issue. *Id.* at 363–64. Plaintiffs here have not (and cannot) point to any such individual loss.

beneficiaries of a private trust" because, unlike trust beneficiaries, "[t]he plan participants' benefits are fixed and will not change, regardless of how well or poorly the plan is managed." *Id.* That the *Thole* plaintiffs had alleged a violation of ERISA's fiduciary obligations did not change the calculus because, as the Supreme Court explained, "'Article III standing requires a concrete injury even in the context of a statutory violation.'" *Id.* at 544 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)); *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) (A statutory violation without a cognizable "adverse effect" does not satisfy Article III.); *David v. Alphin*, 704 F.3d 327, 336 (4th Cir. 2013) (rejecting theory that trust law principles confer standing to sue for fiduciary breaches absent economic harm). Absent plausible allegations of loss, Plaintiffs cannot demonstrate Article III standing.

### 3.    Plaintiffs misapprehend the role of ERISA § 502(a)(9).

Plaintiffs also assert that Congress supposedly endorsed their no-injury theory of standing by enacting ERISA § 502(a)(9), 29 U.S.C. § 1132(a)(9). Opp. 25–26. But "Congress legislates against the background of . . . standing[,]" *Bennett v. Spear*, 520 U.S. 154, 163 (1997), and ERISA § 502(a)(9) is fully harmonious with the constitutional rule. Against that backdrop, ERISA § 502(a)(9) establishes a cause of action for former participants to challenge an annuitization *when they have been injured or are at a substantial risk of imminent harm*. Likewise, the statute's reference to "posting of security to assure receipt . . . of the amounts provided *or to be provided*" merely confirms that Congress intended to provide former participants with a mechanism to secure their *future* benefits in cases involving an imminent risk of harm. *See* Opp. 25 (quoting ERISA § 502(a)(9)).[8]

Congress obviously cannot legislate away Article III standing constraints,[9] and there is no indication that in enacting ERISA § 502(a)(9) Congress tried to. On the contrary, the legislative

---

[8] Even though ERISA's six-year statute of repose is relatively lengthy, Plaintiffs argue that its strictures make it "absurd" to "require Plaintiffs to wait to sue until Athene defaults." Opp. 25–26. But there is no statute of repose exception to the constitutional requirements for standing. And all that Plaintiffs must plausibly plead is some *imminently threatened* injury. If they can't do that, there is no case or controversy under Article III.

[9] *See Thole*, 590 U.S. at 544 ("This Court has rejected the argument that a plaintiff automatically satisfies the injury-in-fact

history of ERISA § 502(a)(9) confirms Congress's limited aims. Congress's central concern was to "protect the 84,000 workers and retirees whose retirement security ha[d] been jeopardized by the insolvency of the Executive Life Insurance Co." 139 Cong. Rec. S 9874, 9874 (July 29, 1993) (Sen. Metzenbaum); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1455 (9th Cir. 1995) (discussing intent behind § 502 (a)(9)). Those workers clearly satisfied Article III because, unlike Plaintiffs here, they had already been harmed by a reduction in their benefits and faced future imminent harm from Executive Life's ongoing insolvency. That type of action remains available—the problem for Plaintiffs is that they cannot allege any similar harm.

### 4. Plaintiffs' allegations do not establish a "substantial risk" of Athene's imminent default or a substantial probability of harm.

While Plaintiffs quibble over the precise formulation of the legal test for a cognizable imminent harm, they do not dispute that the First Circuit has required a plaintiff to allege facts showing that an injury is "close to impending," *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017), and they concede that they must plead a "substantial risk" that Athene will fail and imperil their benefits. Opp. 23.[10] Plaintiffs must allege "*both* (i) a *substantially* increased risk of harm and (ii) a *substantial probability* of harm with that increase taken into account,"[11] and Plaintiffs plead neither.

Plaintiffs argue that they have pleaded imminent harm because their "factual allegations establish Athene's *comparative* risk[.]" Opp. 24. But "comparative risk" is not the same as a "substantial probability of harm": Stepping outside in the desert entails a *comparative* risk of being

---

requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue[.]").

[10] Plaintiffs accuse Defendants of "misstating the law" because Defendants quoted *Clapper*'s statement that a harm must be "certainly impending." Opp. 23; *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013). Plaintiffs contend they have standing if "the threatened injury is 'certainly impending,' *or* there is a 'substantial risk' that the harm will occur." Opp. 22 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). But courts have concluded there is no difference between these two formulations. *See Clapper*, 568 U.S. at 414 n.5 (casting doubt on whether the formulations are necessarily "distinct"); *Chambliss v. CareFirst, Inc.*, 189 F. Supp. 3d 564, 569 (D. Md. 2016) (equating the formulations).

[11] *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007); *Kerin v. Titeflex Corp.*, 770 F.3d 978, 983 (1st Cir. 2014) (the "substantial-probability" requirement is an essential limitation on standing for claims based on risk of future injury without which "all hypothesized, non-imminent 'injuries' could be dressed up as 'increased risk of future injury'").

rained on; that does not mean one faces a *substantial probability* of getting wet. Plaintiffs point to no allegations suggesting Athene's default is close to impending or that "a substantial probability of harm" exists. Instead, Plaintiffs' allegations establish the opposite—that Athene's risk of failing is remote (even if allegedly higher than peers). For example, Plaintiffs allege that only 5% of issuers holding a Moody's credit rating of "A"—which Plaintiffs allege Athene holds—have defaulted over the last twenty years. Compl. ¶ 115. And Plaintiffs themselves assert that a default is unlikely within the six-year statute of repose (Opp. 25–26), negating any inference of an "imminent" harm.

Nor do Plaintiffs account for the multiple layers of protection the PRT established for Plaintiffs' pension payments. The Complaint itself acknowledges that Plaintiffs' benefits are secured in the first instance by a fully funded separate account that is shielded by law from Athene's general creditors. Compl. ¶¶ 102–03; Goeke Decl. Ex. C at 18 § 1.6. Plaintiffs do not allege that the billions in assets in that separate account are inadequate to fund their benefits. And while Plaintiffs have alleged that Athene as a whole invests in so-called "risky assets" and relies on Bermuda-based reinsurance (*e.g.*, Compl. ¶¶ 85–86, 98–100), Plaintiffs do not allege that is so for the separate account, which "is intended to be invested primarily in investment-grade fixed income securities." Goeke Decl. Ex. C at 18 § 1.5. Nor do Plaintiffs allege that the security of the separate account depends on the general creditworthiness of Athene.

Instead, Plaintiffs try to suggest that the separate account is not truly "ring-fenced" and secure because (i) it supports "retirees annuitized by other employers," and (ii) assets may be transferred to Athene's general account. Opp. 24. Yet Plaintiffs concede that funds can be transferred only if the separate account has a surplus (Compl. ¶ 103), and the Group Annuity Contract ("GAC") provides that the determination of whether there is a surplus must take into account all obligations supported by the separate account. Goeke Decl. Ex. C at 18–19 §§ 1.6–1.7. And even then, the amount transferred cannot exceed the amount of surplus and so cannot create a

shortfall. *Id.* Tellingly, Plaintiffs do not allege that the assets in the separate account—shielded from Athene's creditors—have ever fallen below (or are likely to fall below) the amount necessary to fully pay all of their future pension obligations. That omission alone precludes any inference of a *substantial probability* of imminent harm. *See New Orleans ILA Pensioners Ass'n v. Bd. of Trs. of New Orleans Emps. Int'l Longshoremen's Ass'n AFL-CIO Pension Fund*, 2008 WL 215654, at *3 (E.D. La. Jan. 24, 2008) (defined benefit plan participants lacked standing where they failed to "establish that the remaining pool of assets will be inadequate to pay for the plan's outstanding liabilities").[12]  The Court need go no further to find that Plaintiffs lack standing.

## II.    Plaintiffs have failed to plausibly plead a fiduciary breach claim against the AT&T Defendants in Counts I–III.

None of Plaintiffs' fiduciary breach claims against the AT&T Defendants have been sufficiently pleaded.

### A.    Plaintiffs do not plausibly allege that the AT&T Defendants had fiduciary responsibility for the selection of Athene in Count I.

Plaintiffs' Complaint alleges (in multiple places) that SSGA was appointed as the independent fiduciary and assigned the responsibility to select the annuity provider for the PRT. Compl. ¶¶ 2, 4, 15, 38, 137, 153, 158. Indeed, their claims against SSGA are premised on the theory that SSGA made the selection decision. *Id.* ¶¶ 192–98. Those allegations doom Count I because they establish that none of the AT&T Defendants had fiduciary responsibility for Athene's selection.

Plaintiffs nevertheless contend that by "implementing the decision to annuitize," the AT&T Defendants were somehow part of a "joint[] decision" to "select[] Athene as the annuity provider." Opp. 32–33. That wordplay conflates two distinct decisions separated by more than three months—

---

[12] Courts have acknowledged that the "risk that . . . pension benefits will at some point in the future be adversely affected . . . is too speculative to give rise to Article III standing." *Alphin*, 704 F.3d at 338; *see also Duncan v. Muzyn*, 885 F.3d 422, 428 (6th Cir. 2018) (emphasizing multiple backstops and rejecting an alleged harm "sometime down the road, if the Plan falls on hard times" as too speculative); *see also Nat'l Ass'n of Gov't Emps., Inc. v. Yellen*, 120 F.4th 904, 910 (1st Cir. 2024) (finding lack of standing because "[a]ny forecasted injuries based on the possible-but-yet-to-ever-occur" default "are insufficient to establish likely future harm").

(i) the decision by AT&T Inc. in its settlor capacity to annuitize the Plan's pension obligations, and (ii) SSGA's selection of Athene as the annuity provider. Plaintiffs do not (and cannot) dispute the long line of cases holding that the former—AT&T Inc.'s decision to engage in a PRT—is a settlor decision that does "not implicate . . . fiduciary duties" and cannot sustain claims of fiduciary breach. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); Mot. 7, 15 (collecting cases).[13] The mere fact that AT&T Inc. signed the agreement effectuating its non-fiduciary decision to proceed with the PRT does not transform a non-fiduciary decision into a fiduciary one.[14]

Moreover, nowhere in the Complaint do Plaintiffs allege that any of the AT&T Defendants actually controlled the annuity provider selection decision that the Complaint concedes was delegated to SSGA. In support of this theory, the Opposition cites Compl. ¶¶ 7, 30–31, 138, but those paragraphs merely contain generic allegations about the roles of AT&T Services and the Benefit Plan Investment Committee with no suggestion that they participated in the selection of Athene. And the documents cited in the Opposition preclude Plaintiffs from ascribing the selection power to any entity but SSGA. For instance, the Commitment Agreement plainly states that SSGA—and *only* SSGA—made the decision to purchase annuities from Athene.[15] SSGA's Engagement Agreement likewise explains that "[a]s Independent Fiduciary," SSGA had "full discretionary authority" to "select one or more insurers to provide annuities." *See* Goeke Decl. Ex. B at 2–3.[16]  The AT&T Defendants cannot have breached fiduciary duties in making the non-fiduciary

---

[13] The cases that Plaintiffs cite (Opp. 32) merely recognize that the selection of an annuity provider is a fiduciary decision.  *See Waller v. Blue Cross of Ca.,* 32 F.3d 1337, 1342 (9th Cir. 1994); *Truck Drivers' Union Loc. 42 Health & Welfare Fund,* 933 F. Supp. 1124, 1143 (D. Mass. 1996). Neither of those cases involved independent fiduciaries or held that executing the agreement to effectuate a PRT was a fiduciary decision. *See generally Sanofi-Synthelabo Inc. ex rel Sanofi Grp. Pension Plan v. Eastman Kodak Co.*, 2000 WL 1611068, at * n.7 (S.D.N.Y. 2000).

[14] This is particularly true because AT&T Inc. signed the agreement solely "in its capacity as a sponsor of the Plan"—*i.e.*, in a non-fiduciary role. Goeke Decl. Ex. C at 2.

[15] *See id.* at 16, § 8(e) (SSGA was appointed "the designated fiduciary responsible for . . . selecting one or more insurers to provide annuities" to the Plan); *id.* at 9, § 9(c) (the "Independent Fiduciary has selected insurers" and "is responsible for exercising independent judgment").

[16] Plaintiffs pivot to arguing that AT&T Defendants retained SSGA and had "duties to monitor the fiduciaries they

decision to proceed with the PRT, and Count I should, accordingly, be dismissed.

**B.    Plaintiffs do not plausibly plead a claim for fiduciary breach based on the selection of SSGA in Count III.**

Plaintiffs have also not plausibly alleged that the AT&T Defendants breached their fiduciary duties in the selection of SSGA. To start, Plaintiffs direct their fire at the wrong entities: the Investment Management Committee—*not* the AT&T Defendants—had the fiduciary authority to select SSGA. Mot. 18 & n.35. Plaintiffs do not even mention AT&T Inc. or contend it had any role in the hiring of SSGA. *See* Opp. 39. With respect to AT&T Services, Plaintiffs rely solely on the allegation that SSGA's Engagement Agreement states that AT&T Services "wishes to retain the services of SSGA" (Opp. 39), but the agreement is clear that the Investment Management Committee "is the 'fiduciary' of the Plan with respect to the selection and monitoring of an independent fiduciary." Goeke Decl. Ex. B at 3. Nor are there any allegations plausibly supporting Plaintiffs' argument that "the membership of the Investment Management Committee overlaps with the AT&T Defendants, and the committee is simply a device for effectuating the AT&T Defendants' will." Opp. 39. Plaintiffs cannot sweep aside distinctions between different corporate entities based just on their unsupported say-so.[17]

Regardless, Plaintiffs have failed to adequately plead that the selection of SSGA was a breach by anyone. Plaintiffs do not even once mention their breach of loyalty claim in their Opposition and offer nothing in response to the AT&T Defendants' arguments to dismiss that claim. *See* Opp. 38–41. Plaintiffs' silence speaks volumes, and their loyalty claim must be dismissed.[18]

---

appoint." Opp. 33–34. But this forms the basis of Plaintiffs' entirely separate "failure to monitor" claim in Count X; it does not provide a basis to hold the AT&T Defendants liable for the selection decision in Count I. *See infra*, Part III.D.

[17] Plaintiffs make no effort to satisfy the standard for piercing the corporate veil to hold AT&T Inc. liable for the actions of AT&T Services (nor do they establish the prerequisites for vicarious liability to hold AT&T Services liable for its employees' actions). Instead, they advance the facially defective argument that the AT&T Defendants may be held liable for a decision they did not make merely because it somehow reduces "this action's complexity." Opp. 40.

[18] *See Liberty Mut. Ins. Co. v. Aftermath Servs. LLC*, 2023 WL 5435878, at *4 (D. Mass. Aug. 23, 2023) (failure to respond in an opposition to arguments made in a motion to dismiss constitutes waiver) (citing cases).

Plaintiffs' prudence claim fares no better. Plaintiffs' basis for alleging that a prudent fiduciary would have disqualified SSGA is that it holds shares of Athene's parent company, Apollo, on behalf of clients investing in its index funds. Compl. ¶¶ 129, 154. However, Plaintiffs still do not explain why a prudent fiduciary would be concerned with the levels of stock that SSGA holds as a manager of client assets. As an index fund manager, SSGA is obligated to hold Apollo and every other stock in the indices, and it therefore holds as much or *more* stock in annuity providers that Plaintiffs paint as appropriate choices—such as Prudential and MetLife. Mot. 20 & n.41. The Complaint offers no reason why a fiduciary would conclude that SSGA had a disloyal incentive to choose Athene,[19] and it bears emphasis that judicially noticeable materials demonstrate that SSGA has frequently selected alternative annuity providers. Mot. 20 & n.42.[20] The Complaint also recognizes, as it must, that "numerous" fiduciaries have hired SSGA to serve as an independent fiduciary, which undercuts any claim that *no* prudent fiduciary could have hired SSGA. Compl. ¶¶ 130, 156. Plaintiffs have no response to these defects in their prudence allegations, and so just ignore them in their Opposition.

### C.   Plaintiffs' allegations do not plausibly establish that the AT&T Defendants are liable as co-fiduciaries or non-fiduciaries in Counts I-II.

Plaintiffs cannot salvage their fiduciary breach claims by seeking to hold the AT&T Defendants liable for the conduct of others (as a co-fiduciary or non-fiduciary). *See* Mot. 16–17. *First*, Plaintiffs have failed to state a claim against any of the AT&T Defendants for fiduciary breach under ERISA § 404(a)(1), as required for a co-fiduciary claim under ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2). *Supra*, Part II.A–B. *Second*, all of Plaintiffs' remaining co-fiduciary and non-fiduciary

---

[19] *See Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 797 (D. Minn. 2018) (a potential conflict, "without more, does not state a claim" for breach of prudence; a plaintiff must "additionally plead that the [selection] process … was flawed").

[20] Plaintiffs' primary response is that these SEC filings cannot be considered. Opp. 40–41. But the AT&T Defendants do not rely on the truth of the matter asserted in these filings, but rather offer them as evidence of the information publicly available to a plan sponsor conducting due diligence and considering hiring SSGA as an independent fiduciary. *See Tassinari v. Salvation Army Nat'l Corp.*, 610 F. Supp. 3d 343, 357 n.12 (D. Mass. 2022) (on motion to dismiss, court may consider reliable documents outside complaint "for their existence or legal effect"); *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1011 (N.D. Cal. 2006) (taking judicial notice of "documents filed with the SEC" "for the fact that the statements made therein were made to the public on the dates specified").

claims also fail because Plaintiffs have not alleged that the AT&T Defendants had actual knowledge of another's breach—that is, awareness not only of another fiduciary's conduct, but also that the conduct constituted a breach. ERISA § 405(a)(1). In their Opposition, Plaintiffs cobble together disparate allegations and characterize them as satisfying that standard. Opp. 35. With respect to Count I, however, all that Plaintiffs have alleged in conclusory fashion is that the AT&T Defendants knew that "the Athene Annuities were abnormally cheap." Opp. 35. With respect to Count III, the Complaint alleges only that "public information . . . showed [SSGA's] conflicts in assisting with the annuitization." *Id.* None of those allegations pleads that any of the AT&T Defendants *knew* that hiring SSGA was supposedly a breach. Indeed, Count III is premised on the assertion that the AT&T Defendants *lacked* such knowledge. Plaintiffs cannot have it both ways.[21]

## III.   Plaintiffs have failed to plausibly plead any prohibited transaction claims against the AT&T Defendants in Counts V–VII.

### A.    The hiring of SSGA was not a prohibited transaction (Count V).

Count V should be dismissed because ERISA § 406, 29 U.S.C. § 1106(a) only prohibits transactions with "parties in interest" and Plaintiffs have not plausibly alleged that SSGA was a "party in interest" before being hired as independent fiduciary. Mot. 23–24. Plaintiffs claim that they do, in fact, "allege a prior relationship with AT&T." Opp. 53 (citing Compl. ¶¶ 127–28). But ERISA does not define "party in interest" to include anyone with some sort of "prior relationship" with a plan's sponsor. *See* ERISA § 3(14), 29 U.S.C. § 1002(14); *D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 609 (5th Cir. 2023). And neither of the alleged "prior relationship[s]" places SSGA within the categories of entities included in the statutory definition. *First*, Plaintiffs emphasize that SSGA owns shares of AT&T stock, Opp. 53, but they do not allege

_____

[21] "Where some allegations in the complaint contradict other allegations, the conflicting allegations become naked assertions devoid of further factual enhancement, which therefore cannot be presumed true." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 109 (D.D.C. 2010); *see also James v. Cox*, 2022 WL 2905367, at *6 (D. Mass. July 22, 2022) ("The district court will not accept as true pleading allegations that are contradicted . . . by other allegations.").

that SSGA met the 50% ownership threshold necessary for party in interest status. ERISA §

3(14)(E). *Second*, Plaintiffs allege that SSGA provided services to other AT&T-sponsored plans—the

AT&T Savings Plan Master Trust and "AT&T's defined contribution plans." Compl. ¶ 127. But, as

the Complaint acknowledges, these plans are separate and "[a]part from AT&T's defined benefit

plans" (*id.*), and "[p]arties in interest" are "limited to entities … providing services *to the plan at issue*."

*D.L. Markham*, 88 F.4th at 609; ERISA § 3(14)(B); Mot. 23 n.48; *see also Lockheed v. Spink*, 517 U.S.

882, 893 (1996) (ERISA § 406 doesn't bar arm's-length transactions with service providers but only

arrangements that "present a special risk of plan underfunding because they are struck with plan

insiders."). Plaintiffs have no answer to this problem, so they just ignore it.[22]

　　Even if Plaintiffs could plausibly allege that SSGA was a party in interest (they cannot), the

exemption provided under ERISA § 408(b)(2) applies. 29 U.S.C. § 1108; *see* Mot. 24. ERISA

§ 408(b)(2) permits certain transactions so long as "no more than reasonable compensation is paid."

*See Turner v. Schneider Elec. Holdings, Inc.*, 530 F. Supp. 3d 127, 138 (D. Mass. 2021) (Gorton, J.). The

Complaint contains no allegation regarding SSGA's compensation—much less an allegation raising

doubts about the applicability of this statutory exemption. Plaintiffs do not contend otherwise[23] but

rely on an out-of-circuit case to insist that they "need not plead around ERISA's prohibited

transaction exemptions." Opp. 54. *This Court*, however, has twice held otherwise and dismissed

claims when, as here, the Complaint failed to plead nonexempt transactions. *See Turner*, 530 F. Supp.

---

[22] Contrary to Plaintiffs' assertion, ERISA does not define "party in interest" to include all "entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries," Opp. 53, but instead provides a specific and exclusive list of entities. ERISA § 3(14). Neither of the cases Plaintiffs cite supports expanding the statutory definition beyond its terms. Opp. 53. In *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, the parties agreed that for purposes of the appeal the court should assume that Salomon Smith Barney qualified as a "party in interest." 530 U.S. 238, 242 n.1 (2000). By contrast, in *Ramos v. Banner Health*, the court concluded that the defendant was not a party in interest because he did not qualify under the plain text of the statute. 1 F.4th 769, 787 (10th Cir. 2021) ; *cf. Hughes*, 525 U.S. at 447 (ERISA is a "comprehensive and reticulated statute" that is "enormously complex and detailed" and so "should not be supplemented by extratextual remedies").

[23] Plaintiffs try to suggest that "no compensation" would have been reasonable given SSGA's relationship with Athene, but they provide no legal support for that theory, and, as already explained, their allegations regarding that SSGA relationship go nowhere. *See* Opp. 54; *see supra* 12–13.

3d at 138; *Tracey v. Mass. Inst. of Tech.*, 404 F. Supp. 3d 356, 364 (D. Mass. 2019) (Gorton, J.); *see also Cunningham v. Cornell Univ.*, 86 F.4th 961, 975 (2d Cir. 2023) (same), *cert. granted*, No. 23-1007, 2024 WL 4394127 (U.S. Oct. 14, 2024). Plaintiffs offer no reason for this Court to reconsider its prior decisions in *Turner* and *Tracey*, which alone compel dismissal of Count V.

### B. Count VI fails because the agreement to purchase annuities from Athene was not a prohibited transaction.

Count VI fails for similar reasons. Athene—just like SSGA—does not fall within any of the statutory definitions of a "party in interest" prior to the PRT. *See* Mot. 25; *supra*, Part III.A. Plaintiffs try similar workarounds to no avail. Plaintiffs maintain "the AT&T Defendants had a commercial relationship with Athene at least as early as April 26, 2023, which precedes [the PRT on] May 4, 2023." Opp. 55. But the purported "commercial relationship" that began April 26, 2023 was the execution of the Commitment Agreement memorializing the annuity transaction. *See id.* (citing Compl. ¶¶ 10, 138); *see also* Goeke Decl. Ex. C. at 2. As numerous courts have recognized, it would be "absurd" if the "initial agreement with a service provider would simultaneously transform that provider into a party in interest" because then every retention of a service provider would be prohibited. *See, e.g., Ramos*, 1 F.4th at 787. Plaintiffs do not address, much less distinguish, the long line of cases cited by the AT&T Defendants on this point. Mot. 24 n.49.[24]  Plaintiffs also simply ignore the Department of Labor Guidance that underscores a separate fatal problem with their theory: providing annuity coverage does not entail the provision of "services."[25] *See* Opp. 55.

Plaintiffs also do not dispute that, even if they were able to plead that Athene was a "party in

---

[24] Plaintiffs' contention that "Apollo w[as] negotiating a . . . direct investment in an AT&T subsidiary" does not establish that Athene was a party in interest either. Opp. 55. Even putting aside the fact that this allegation involves distinct corporate entities, a purported investment by Apollo in an AT&T subsidiary does not establish that Athene was already "providing services *to the plan*." ERISA § 3(14)(B). Moreover, according to the Complaint, that deal occurred "a month after the PRT" (Compl. ¶ 128) and, thus, cannot establish that Athene was a party in interest *prior* to the PRT.

[25] The sale of annuity contracts is not the provision of a service; it is the sale of a good. *See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 259 (1995) ("[A]nnuities are widely recognized as … investment products.").

interest," the PRT qualifies for multiple exemptions—namely, Prohibited Transaction Exemptions 84-14 and 84-24, as well as a statutory exemption, ERISA § 408(b)(17). *See* 89 Fed. Reg. 23090-01; 89 Fed. Reg. 32302-01. Instead, Plaintiffs again insist that they need not plead facts negating any applicable exemptions to ERISA's broad prohibitions even though this Court has already repeatedly rejected that precise argument. Opp. 55–56; *supra*, Part III.A. Plaintiffs try to suggest that this Court's holdings in *Turner* and *Tracey* apply only to statutory exemptions, not regulatory exemptions like 84-14 and 84-24. Opp. 55–56. That distinction makes no sense. The statute itself explicitly grants the DOL authority to create regulatory exemptions and incorporates them. ERISA § 408(a).

Finally, Plaintiffs dispute whether Athene's compensation was "reasonable" for purposes of the exemption. Opp. 54. But this Court has sensibly held compensation to be "reasonable" where it is equivalent to or less than what other providers charged, *Tracey*, 404 F. Supp. 3d at 364, and Plaintiffs themselves allege that Athene "charged less than its competitors" and offered "shockingly low price[d]" annuities. Compl. ¶ 146; Dkt. 92 at 2, 5. The suggestion that the AT&T Defendants, not the Plan, benefited from Athene's low price is just plain wrong. Opp. 56. As Plaintiffs acknowledge in the very next sentence, the Plan "used exclusively Plan Assets to buy the annuities." *Id.* Plaintiffs' allegations leave no room to suggest that Athene's compensation was not "reasonable."

### C.    Plaintiffs also fail to allege a claim under ERISA § 406(b) in Count VII.

Plaintiffs also fail to state a claim that the annuitization involved self-dealing prohibited under ERISA §§ 406(b)(1)–(2). The threshold flaw is that the AT&T Defendants could not "deal with the plan's assets in their own interests" because they had no fiduciary role in the transaction—it was SSGA, *not* AT&T, that selected Athene. *Supra* 10–11. Thus, any benefits that the AT&T Defendants allegedly received from the PRT flowed from a non-fiduciary decision and cannot form the basis for a prohibited transaction claim. Mot. 22–23. Plaintiffs also do not (and cannot) address Defendants' argument that ERISA § 406(b)(2) is inapplicable because there are no factual allegations

establishing that the AT&T Defendants were acting on behalf of or representing an "adverse party" in the PRT. The Complaint does not even plead who the "adverse" party supposedly is, and there are no allegations, for example, that AT&T took any action intending to benefit Athene or SSGA that was adverse to the Plan. Rather, the plan assets were used to purchase a group annuity—a purpose permitted by the plan document and ERISA. This claim should also be dismissed.

### D. Plaintiffs are unable to defend their failure to monitor claim (Count X).

Plaintiffs' Opposition fails to rehabilitate the defects in their failure to monitor claim. At the outset, Plaintiffs do not dispute (or even address) the AT&T Defendants' argument that none of the AT&T Defendants appointed SSGA as the independent fiduciary (*see supra*, Part II.A), and, thus, lacked corresponding monitoring duties. *See* Opp. 58–59; Mot. 28–29. That alone defeats Plaintiffs' derivative monitoring claim. *See* Mot. 28–29 (citing cases). Plaintiffs have also failed to identify, either in their Complaint or in their Opposition, any underlying failings in the monitoring process. Instead, Plaintiffs rely only on the conclusory allegation that the AT&T Defendants "fail[ed] to ensure that the annuity selection process complied with ERISA." Opp. 58. That allegation is plainly insufficient to sustain a failure to monitor claim, and Count X should be dismissed. *See* Mot. 29.

### E. All claims against the Individual Defendants should be dismissed.

Finally, Plaintiffs cannot defend having sued the Individual Defendants, so they do not even try—they only address the Individual Defendants in a footnote and, even then, they only reference *one of the individuals*. Opp. 40 n.14. The reason for Plaintiffs' silence is obvious: Plaintiffs' sole allegation is that each individual defendant was a member of the Benefit Plan Investment Committee[26] (Compl. ¶¶ 32–36), but this Court (and others) have recognized that this type of group

---

[26] That one of the Individual Defendants, Mr. Goeke, signed the Commitment Agreement makes no difference. *See* Opp. 40 n.14. As noted, the Commitment Agreement merely effectuated the non-fiduciary decision to proceed with the PRT, and the agreement is clear that Mr. Goeke signed on behalf of AT&T Inc. "in its [non-fiduciary] capacity as a sponsor of the plan." Goeke Decl. Ex. C at 2; *supra* 10–11. That says nothing about Mr. Goeke's involvement in any purported fiduciary decision-making, let alone the involvement of any of the other four Individual Defendants who are not even mentioned once in the Opposition. *Cf. Coriale v. Xerox Corp.*, 775 F. Supp. 2d 583, 600 (W.D.N.Y. 2011)

pleading is insufficient to sustain a claim. Mot. 30 (collecting cases); *see, e.g.*, *Alas v. AT&T Inc.*, 2019 WL 1744847, at *4 (C.D. Cal. Feb. 25, 2019) (granting motion to dismiss where complaint "plead[ed] no acts of the Individual Defendants that allegedly breached their fiduciary duties, but merely note[d] that they were members of the Benefit Plan Investment Committee").[27] But this group pleading is particularly deficient here because, as discussed above, Plaintiffs have sued the wrong committee: the Investment Management Committee—not the Benefit Plan Investment Committee—had fiduciary responsibility for hiring SSGA. *Supra*, Part II.B.

## IV.    Plaintiffs' objection to "extrinsic material" is a red herring.

Plaintiffs spill considerable ink imploring this Court not to consider any "extrinsic materials" at the dismissal stage. Opp. 11–14. But, as Plaintiffs acknowledge (*see id.* at 11–12), on a motion to dismiss, the Court may consider "official public records[,] . . . documents central to plaintiffs' claims[,] . . . [and] documents sufficiently referred to in the complaint." *Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018). All of the documents submitted with the AT&T Defendants' motion indisputably fall within at least one of these categories.

*First*, the Plan documents (Goeke Decl. Ex. A & Galloway Decl. Exs. D–E) "are undoubtedly integral to the Complaint" as numerous courts have recognized. Mot. n.3; *Forgione v. Gaglio*, 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015) (considering ERISA plan documents on motion to dismiss). The same is true for the Commitment Agreement (Ex. C), which effectuated the transaction at the heart of this Complaint.[28] *See, e.g.*, Compl. ¶ 38. Likewise, Counts III and V focus on the retention of SSGA and, thus, the SSGA Engagement Agreement (Ex. B) is central to the

---

(employee was not a fiduciary even though she "signed some plan and plan-related documents").

[27] *Daly v. W. Monroe Partners*, 2023 WL 2525362, at *5 (N.D. Ill. 2023); *Luense v. Konica Minolta Bus. Sols. U.S.A.*, 541 F. Supp. 3d 496, 509–10 (D.N.J. 2021); *Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186, at *6 (D.N.J. Sept. 27, 2021).

[28] A court may consider an agreement that is central to the Complaint. *See In re Fid. ERISA Fee Litig.*, 990 F.3d 50, 53–54 (1st Cir. 2021); *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

Complaint and incorporated by reference. *See, e.g.*, Compl. ¶¶ 136–37 (relying on SSGA Agreement).

*Second*, the remaining documents, attached to the Pollak Decl., are all reliable public records that can be judicially noticed for the purposes the AT&T Defendants cite them. The Forms 10-K (Exs. F, L–M, S, U–AA), Forms 10-Q (Exs. N, BB), Forms 8-K (Exs. P, T), and Form 13F (Ex. R) are all "public disclosure documents required by law to be, and that have been, filed with the SEC." *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 756 (S.D.N.Y. 2003); *Tracey v. Mass. Inst. of Tech.*, 2017 WL 4453541, at *3 (D. Mass. Aug. 31, 2017). Similarly, the documents from the National Association of Insurance Commissioners are "promulgated by . . . a quasi-governmental agency, and published online by [NAIC] for use and reliance upon by the general public." *Itzhaki v. U.S. Liab. Ins. Co.*, 536 F. Supp. 3d 651, 655 (C.D. Cal. 2021); *see State Farm Mut. Auto. Ins. Co. v. Comm'r*, 698 F.3d 357, 361 (7th Cir. 2012). And the DOL's regulatory statement (Pollak Decl. Ex. Q) is a similarly reliable "report[] of [an] administrative bod[y]" related to IB 95-1, which is discussed throughout the Complaint and central to Plaintiffs' claims. *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 851 n.10 (9th Cir. 2016). The AT&T Defendants do not rely on such materials for their truth, as Plaintiffs falsely suggest. *See* Opp. 13. Instead, the AT&T Defendants called attention to these public regulatory and industry filings merely as evidence of the information that would have been available to a fiduciary conducting a prudent investigation of SSGA and Athene. *See supra*, n.17.

Regardless, the defects in Plaintiffs' allegations are so plain that this Court need not look beyond the pleadings to dismiss the Complaint. *See, e.g.*, Mot. 9. Any extrinsic materials that the AT&T Defendants submitted with their motion merely reinforce what is already clear from the face of the Complaint: Plaintiffs have not been injured and they fail to state a claim for relief.

## CONCLUSION

The AT&T Defendants respectfully request that the Court grant their motion and dismiss the Complaint in its entirety with prejudice.

Dated:  February 3, 2025                    Respectfully Submitted,


                                            */s/ Meaghan VerGow*
                                            O'MELVENY & MYERS LLP
                                            Meaghan VerGow (*pro hac vice*)
                                            Brian D. Boyle (*pro hac vice*)
                                            Shannon M. Barrett (*pro hac vice*)
                                            1625 Eye Street, NW
                                            Washington, DC 20006–4001
                                            Tel: (202) 383–5300
                                            Fax: (202) 383–5414
                                            mvergow@omm.com
                                            bboyle@omm.com
                                            sbarrett@omm.com

                                            O'MELVENY & MYERS LLP
                                            William Pollak (*pro hac vice*)
                                            1301 Avenue of the Americas
                                            New York, NY 10019
                                            Tel: (212) 326–2000
                                            Fax: (212) 326–2061
                                            wpollak@omm.com

                                            NUTTER, McCLENNEN & FISH LLP
                                            Ian D. Roffman, BBO# 637564
                                            Mark C. Jensen, BBO# 646662
                                            155 Seaport Blvd.
                                            Boston, MA 02210
                                            Tel: (617) 439–2000
                                            Fax: (617) 310–9000
                                            iroffman@nutter.com
                                            mjensen@nutter.com

                                            *Counsel for the AT&T Defendants*

21

**<u>CERTIFICATE OF SERVICE</u>**

I, Meaghan VerGow, hereby certify that on February 3, 2025, I electronically filed the

foregoing document, captioned "Reply Memorandum of Law in Support of AT&T Defendants'

Motion to Dismiss Plaintiffs' Consolidated Complaint," using the CM/ECF system, which will send

notification of such filing to all parties and counsel of record in the above-captioned case.


*/s/ Meaghan VerGow*
Meaghan VerGow

*Counsel for the AT&T Defendants*