UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LANELL PIERCY, WILLA G. WARD, THOMAS L. MAZZEO, SUE RUSH, CATHERINE SCHLOSS, PATRICIA TATE-JACKSON, and DARLENE WILSON, individually and as representatives on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T INC., AT&T SERVICES, INC., THE BENEFIT PLAN INVESTMENT COMMITTEE, PASCAL DESROCHES, GEORGE GOEKE, DEBRA DIAL, WILLIAM HAMMOND, JULIANNE GALLOWAY, STATE STREET GLOBAL ADVISORS TRUST CO., and DENISE R. SISK,<br><br>Defendants. | Case No. 1:24-cv-10608-NMG |

**MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND FOR ENTRY OF A PARTIAL FINAL JUDGMENT UNDER FED. R. CIV. P. 54(b)**

# TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 3

I. Plaintiffs Challenge the Selection of Athene for AT&T's PRT. ..... 3

II. The Court Rules on Defendants' Motions to Dismiss. ..... 3

III. The Issue of Standing in PRT Cases Has Divided District Courts and Is Currently Under Review in Four Other Circuits. ..... 5

A. The Court's Decision Deepens the Split over Diminution-in-Value Standing in PRT Cases. ..... 5

B. Four Circuits Are Considering PRT Plaintiffs' Standing, after the District Courts in *Konya* and *Doherty* Certified the Question for Interlocutory Appeal. ..... 6

ARGUMENT ..... 8

I. The Court's Standing Decision Should Be Certified, as Multiple Other Circuits Have Recognized. ..... 8

A. The Order Involves a Controlling Question of Law. ..... 8

B. There Is a Substantial Ground for Difference of Opinion Regarding Whether Plaintiffs Have Article III Standing. ..... 10

C. An Immediate Appeal Will Materially Advance Termination of the Litigation. ..... 11

II. The Court's Ruling as to Count IV Should Also Be Certified. ..... 13

III. The Court Should Enter Final Judgment as to AT&T. ..... 14

A. Legal Standard ..... 14

B. The Court's September 28, 2026 Order Is Final as to AT&T. ..... 15

C. There Is No Just Reason to Delay Entry of Final Judgment as to AT&T. ..... 15

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amyndas Pharms., S.A. v. Zealand Pharma A/S*,
48 F.4th 18 (1st Cir. 2022)....................14, 15, 16

*In re Asia Pulp & Paper Sec. Litig.*,
293 F. Supp. 2d 391 (S.D.N.Y. 2003)....................18

*Atrion Networking Corp. v. Marble Play, LLC*,
31 F. Supp. 3d 357 (D.R.I. 2014) ....................9

*Bank of New York v. Hoyt*,
108 F.R.D. 184 (D.R.I. 1985) ....................13

*Bixby v. Town of Rehoboth*,
744 F. Supp. 3d 96 (D. Mass. 2024), *appeal voluntarily dismissed sub nom. Bixby v. Oliveira*, 2025 WL 763674 (1st Cir. Jan. 16, 2025) ....................8

*Bristol-Myers Squibb Co. v. Doherty*,
No. 25-3014 (2d Cir.)....................6

*Bueno v. Gen. Elec. Co.*,
2025 WL 2719995 (N.D.N.Y. Sept. 24, 2025), *appeal docketed*, No. 26-2051 (2d Cir. July 27, 2026) ....................5, 7

*Camire v. Alcoa USA Corp.*,
2025 WL 947526 (D.D.C. Mar. 28, 2025), *appeal docketed*, No. 26-7035 (D.C. Cir. Mar. 25, 2026)....................6, 7

*Canty v. Old Rochester Reg'l Sch. Dist.*,
54 F. Supp. 2d 66 (D. Mass. 1999) ....................10

*Courtemanche v. Motorola Sols., Inc.*,
793 F. Supp. 3d 279 (D. Mass. 2025) ....................11

*Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*,
78 F.3d 698 (1st Cir. 1996) ....................14

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1 (1980)....................14, 15

*DeLia v. Verizon Commc'ns, Inc.*,
682 F. Supp. 2d 58 (D. Mass. 2010), *aff'd*, 656 F.3d 1 (1st Cir. 2011) ....................17

*Dempsey v. Verizon Commc'ns, Inc.*,
2026 WL 72197 (S.D.N.Y. Jan. 8, 2026) ....................6

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ....................18

*Doherty v. Bristol-Myers Squibb Co.*,
2025 WL 2774406 (S.D.N.Y. Sept. 29, 2025), *certified for interlocutory appeal*, 2025 WL 3204436 (S.D.N.Y. Nov. 17, 2025) .................... *passim*

*Dow v. Lumen Techs., Inc.*,
2026 WL 2582196 (D. Colo. Sept. 1, 2026) ....................5

*Fed. Home Loan Bank of Bos. v. Moody's Corp.*,
821 F.3d 102 (1st Cir. 2016) ....................17

*Feliz v. United States*,
272 F.R.D. 299 (D. Mass. 2011), *aff'd sub nom. Feliz v. MacNeill*, 493 F. App'x 128 (1st Cir. 2012) ....................17, 18

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990) ....................10

*Konya v. Lockheed Martin Corp.*,
2025 WL 962066 (D. Md. Mar. 28, 2025), *certified for interlocutory appeal*, 2025 WL 2050997 (D. Md. July 22, 2025) .................... *passim*

*Maneman v. Weyerhaeuser Co.*,
2026 WL 884985 (W.D. Wash. Mar. 31, 2026) ....................5, 6, 10

*McEwen v. Nat'l Rifle Ass'n of Am.*,
2022 WL 2073354 (D. Me. June 9, 2022) ....................18

*McGillicuddy v. Clements*,
746 F.2d 76 (1st Cir. 1984) ....................10

*Meijer, Inc. v. Ranbaxy Inc.*,
245 F. Supp. 3d 312 (D. Mass. 2017) ....................11

*Nystedt v. Nigro*,
700 F.3d 25 (1st Cir. 2012) ....................3, 14, 15, 17

*Pacamor Bearings, Inc. v. Minebea Co.*,
892 F. Supp. 347 (D.N.H. 1995) ....................9

*Philip Morris Inc. v. Harshbarger*,
957 F. Supp. 327 (D. Mass. 1997) ....................2, 8, 10, 13

*Schoen v. ATI, Inc.*,
2025 WL 2970339 (W.D. Pa. Oct. 7, 2025), *adopted sub nom. Schoen v. ATC Inc.*, 2026 WL 2146921 (W.D. Pa. July 27, 2026), *appeal docketed sub nom. Schoen v. ATI Inc.*, No. 26-3161 (3d Cir. Aug. 28, 2026) ....................5, 7

*Simmons v. Galvin*,
2008 WL 11456109 (D. Mass. Jan. 16, 2008) ....................8, 12

*Sovereign Bank v. Bowditch Boat Holdings, LLC*,
376 F. Supp. 2d 3 (D. Mass. 2005) ....................12

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) ....................4, 9

*Waters v. Day & Zimmermann NPS, Inc.*,
2020 WL 4754984 (D. Mass. Aug. 14, 2020) .................... *passim*

**Statutes**

28 U.S.C. § 1292(b) ....................2, 8

29 U.S.C. § 1002(38) ....................16

29 U.S.C. § 1105(d) ....................16

29 U.S.C. § 1341(b)(3) ....................16

**Rules**

Fed. R. Civ. P. 54(b) ....................3, 14

**Other Authorities**

16 Wright & Miller's Federal Practice & Procedure § 3930 (3d ed. 2026) ....................8, 9

## INTRODUCTION

This case presents critical, controlling legal questions that have been decided differently by numerous district courts and for which there is no First Circuit authority. For that reason, all parties agree that an immediate appeal of *all issues* is particularly appropriate here.

Plaintiffs' suit is one of ten similar putative ERISA class actions challenging the selection of an annuity provider to perform a pension risk transfer ("PRT"). On September 28, 2026, this Court denied in part State Street Global Advisors Trust Company and Denise R. Sisk's (collectively "SSGA Trust Co.") motion to dismiss. The Court adopted Magistrate Judge Levenson's conclusions that Plaintiffs have Article III standing to pursue their claims, and further that they have stated a claim for breach of the duty of prudence against SSGA Trust Co. The Court granted the AT&T Defendants' motion to dismiss and dismissed all claims against them on the ground that Plaintiffs failed to adequately allege that the AT&T Defendants[1] acted as fiduciaries in connection with the PRT or had sufficient knowledge of SSGA Trust Co.'s alleged breach to be derivatively liable. ECF No. 186 at 7–8. The Court's Order is the ninth[2] in a string of decisions that have created a split of authority on whether plaintiffs have Article III standing to challenge PRT transactions. The Second and Fourth Circuits have accepted interlocutory appeals on this precise issue, and direct appeals are pending in the Second, Third, and D.C. Circuits.

All parties agree that the Order presents the kind of "difficult and pivotal questions of law not settled by controlling authority" that are properly resolved through interlocutory appeal.

---

[1] This motion refers to AT&T Inc., AT&T Services, Inc., the Benefit Plan Investment Committee, Pascal Desroches, George Goeke, Debra Dial, William Hammond, and Julianne Galloway as "AT&T" or the "AT&T Defendants."

[2] No decision has been issued on the pending motions to dismiss in the tenth case, *Spohn v. IBM*, No. 1:25-cv-12475 (D. Mass.).

*Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997) (quotation marks omitted). With respect to standing, the Court's Order satisfies the statutory requirements of Section 1292(b) because it "involves a controlling question of law" about which there is "substantial ground for difference of opinion," and an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). First, Plaintiffs' standing is a pure question of law and a threshold requirement for this Court's subject matter jurisdiction. Second, the varied results of the other eight district court decisions plainly confirm the existence of a substantial ground for difference of opinion. As noted above, this issue is pending (though has yet to be resolved) in four separate courts of appeals. Finally, an interlocutory appeal would also materially advance the ultimate termination of this case, regardless of whether Plaintiffs or Defendants prevail. For these precise reasons, two other courts have granted requests for interlocutory appeal in nearly identical circumstances, and no court has denied certification.

Certification under Section 1292(b) is also appropriate with respect to this Court's denial of SSGA Trust Co.'s motion to dismiss Plaintiffs' claim for breach of the duty of prudence (Count IV). Because this Count is the sole remaining claim in the case, reversal of this Court's Order would terminate the litigation. And as with standing, the sufficiency of Plaintiffs' allegations under Rule 12(b)(6) is a pure question of law that will be decided solely on the basis of the pleadings. Certification is all the more appropriate in light of the parties' accompanying request for certification under Rule 54(b) as a final judgment with respect to the claims against the AT&T Defendants. A Rule 54(b) judgment will result in appellate review of the merits of effectively the entire underlying action—save for this sole remaining count. Certification of this Court's Order on Count IV will thus result in significant efficiencies for both the judicial system

and the parties, as the First Circuit will then be in a position to assess both standing and the underlying merits with respect to both AT&T and SSGA Trust Co.

The parties further agree that entry of a partial final judgment as to the AT&T Defendants is appropriate under Fed. R. Civ. P. 54(b) because the Court's September 28, 2026 Order "dispose[d] completely . . . [of] all claims against [AT&T]," *Nystedt v. Nigro*, 700 F.3d 25, 29 (1st Cir. 2012) (citation modified), and "there is no just reason for delay," Fed. R. Civ. P. 54(b). Granting the motion would allow Plaintiffs to appeal the Court's ruling dismissing the AT&T Defendants from the case on the basis that they did not have fiduciary responsibility for the selection of Athene, a distinct issue from the factual merits issues pending in the case against SSGA Trust Co. Further, no party will be prejudiced by the entry of partial final judgment. On the contrary, all parties and the Court have an interest in prompt appellate resolution of two threshold issues in the case: Article III standing and AT&T's fiduciary status.

## BACKGROUND

### I. Plaintiffs Challenge the Selection of Athene for AT&T's PRT.

Plaintiffs, former participants in the AT&T Pension Benefit Plan, filed their operative Amended Consolidated Class Action Complaint on October 29, 2025. ECF No. 146 ("Amended Complaint"). They allege that AT&T and SSGA Trust Co. breached ERISA fiduciary duties by selecting Athene as the annuity provider for AT&T's partial PRT. Amended Complaint ¶ 2. Plaintiffs allege that the PRT injured them because, *inter alia*, Athene's annuities are riskier than other annuity products on the market. Amended Complaint ¶¶ 2–5.

### II. The Court Rules on Defendants' Motions to Dismiss.

This Court dismissed Plaintiffs' initial complaint on September 30, 2025 and they filed the Amended Complaint on October 29, 2025. ECF Nos. 143, 146. On November 19, 2025,

AT&T and SSGA Trust Co. moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF Nos. 149, 152. Defendants argued that Plaintiffs have not suffered a cognizable injury that can support Article III standing and that the Amended Complaint fails to state a claim upon which relief may be granted.

On August 31, 2026, Magistrate Judge Levenson issued a Report and Recommendation (ECF No. 179 ("R&R")) to grant the AT&T Defendants' motion to dismiss and to grant in part and deny in part SSGA Trust Co.'s motion to dismiss. On standing, Judge Levenson equated Plaintiffs to the beneficial owners of financial products like individual annuities or bonds. R&R at 12, 27–28. Thus, he concluded, Plaintiffs had standing because they alleged a concrete injury-in-fact in that they received a "less valuable" annuity than "a competent and loyal fiduciary would have selected." R&R at 14. Judge Levenson distinguished this case from *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020), on the grounds that Plaintiffs are no longer participants in an ERISA defined-benefit plan and because Plaintiffs alleged "that their *own* monetary interests have been harmed" in the selection of Athene as Plaintiffs' annuity provider. R&R at 9, 11.

With respect to the merits, Judge Levenson recommended dismissing all of Plaintiffs' claims against SSGA Trust Co. save for Count IV alleging a violation of the duty of prudence in the selection of Athene as the PRT annuity provider, and all claims against AT&T. While Judge Levenson had initially dismissed Count IV in Plaintiffs' prior complaint, he concluded that the Amended Complaint cured "two primary flaws" in Plaintiffs' prior complaint—namely, "(1) the absence of plausible comparators" to Athene and "(2) the failure to address Athene's use of a dedicated account to secure Athene's obligations." R&R at 33. Judge Levenson concluded that AT&T could not be held liable for the fiduciary breach alleged in the Amended Complaint because (1) AT&T delegated its fiduciary duties to SSGA Trust Co. as an independent fiduciary

and "investment manager" under ERISA, 29 U.S.C. §§ 1002(38), 1105(d)(1); and (2) the Amended Complaint insufficiently alleged that the "AT&T Defendants participated in the selection process" of Athene or "knew of, or abetted, a fiduciary breach" by SSGA Trust Co. to make out a claim of derivative fiduciary liability. R&R at 49–57.

On September 28, 2026, this Court adopted in full Magistrate Judge Levenson's Report and Recommendation and entered an Order (ECF No. 186) granting in part and denying in part SSGA Trust Co.'s motion and granting AT&T's motion.

## III. The Issue of Standing in PRT Cases Has Divided District Courts and Is Currently Under Review in Four Other Circuits.

### A. The Court's Decision Deepens the Split over Diminution-in-Value Standing in PRT Cases.

Over the past two years, eight other courts across the country have addressed whether plaintiffs have Article III standing to challenge the selection of an allegedly risky PRT annuity provider when no benefit payments have been missed, but plaintiffs allege that the annuity is less valuable than their pensions and is at a substantial risk of default. Three courts held that plaintiffs had standing and five held that they did not. *Compare Maneman v. Weyerhaeuser Co.*, 2026 WL 884985 (W.D. Wash. Mar. 31, 2026) (plaintiffs have standing); *Doherty v. Bristol-Myers Squibb Co.*, 2025 WL 2774406 (S.D.N.Y. Sept. 29, 2025) (same), *certified for interlocutory appeal*, 2025 WL 3204436 (S.D.N.Y. Nov. 17, 2025); *Konya v. Lockheed Martin Corp.*, 2025 WL 962066 (D. Md. Mar. 28, 2025) (same), *certified for interlocutory appeal*, 2025 WL 2050997 (D. Md. July 22, 2025), *with Dow v. Lumen Techs., Inc.*, 2026 WL 2582196 (D. Colo. Sept. 1, 2026) (plaintiffs lack standing); *Schoen v. ATI, Inc.*, 2025 WL 2970339 (W.D. Pa. Oct. 7, 2025) (R&R) (same), *adopted sub nom. Schoen v. ATC Inc.*, 2026 WL 2146921 (W.D. Pa. July 27, 2026), *appeal docketed sub nom. Schoen v. ATI Inc.*, No. 26-3161 (3d Cir. Aug. 28, 2026); *Bueno v. Gen. Elec. Co.*, 2025 WL 2719995 (N.D.N.Y. Sept. 24, 2025) (same), *appeal*

*docketed*, No. 26-2051 (2d Cir. July 27, 2026); *Camire v. Alcoa USA Corp.*, 2025 WL 947526 (D.D.C. Mar. 28, 2025) (same), *appeal docketed*, No. 26-7035 (D.C. Cir. Mar. 25, 2026); *Dempsey v. Verizon Commc'ns, Inc.*, 2026 WL 72197 (S.D.N.Y. Jan. 8, 2026) (same).

The district courts in *Dow*, *Schoen*, *Bueno*, *Camire*, and *Dempsey* all found that PRT plaintiffs lacked standing based on the Supreme Court's decision in *Thole.*

On the other side of the ledger, the district courts in *Doherty*, *Konya*, and *Maneman*—and this case—each found Article III standing. These district courts rejected the defendants' reliance on *Thole* as inapposite.

### B. Four Circuits Are Considering PRT Plaintiffs' Standing, after the District Courts in *Konya* and *Doherty* Certified the Question for Interlocutory Appeal.

Substantially identical standing issues are pending in the Second, Third, Fourth, and D.C. Circuits. Two of the three other district courts that found standing—*Konya* and *Doherty*—certified their dismissal orders for interlocutory appeal. *See Konya*, 2025 WL 2050997; *Doherty*, 2025 WL 3204436. Both courts of appeals granted review. *See Lockheed Martin Corp. v. Konya*, No. 25-180 (4th Cir.), ECF No. 24; *Bristol-Myers Squibb Co. v. Doherty*, No. 25-3014 (2d Cir.), ECF No. 22.[3] No court has denied interlocutory review in a case where it was sought.

In *Konya*, the court certified its decision for interlocutory appeal because the issue of standing was a controlling question of law and "the ultimate decision rendered was a legal one." 2025 WL 2050997, at *4. The court of appeals could resolve that "pure question of law … quickly and cleanly" without "delv[ing] beyond the surface of the record in order to determine the facts." *Id.* (quotation marks omitted). The court also found a "substantial basis for

[3] The third court to have found standing, *Maneman*, dismissed the claims in their entirety under Rule 12(b)(6), but granted plaintiffs leave to amend. 2026 WL 884985, at *15. Motions to dismiss the Second Amended Complaint in that case are pending. *Maneman v. Weyerhaeuser Co.*, No. 2:24-cv-02050 (W.D. Wash.), ECF Nos. 96, 97.

difference of opinion," because other "district courts to address the issue of whether similar allegations of potential injury establish Article III standing answered the question differently." *Id.* The court reached this conclusion because, "for interlocutory appeals," what matters is "whether courts themselves disagree as to what the law is." *Id.* (quotation marks omitted). And finally, the court concluded that definitively resolving "the application of *Thole* to the allegations at hand … will lend clarity to possible settlement discussions and pretrial preparation." *Id.* (quotation marks omitted). The court found this critical requirement for an interlocutory appeal satisfied despite plaintiffs' assertion that they would amend their complaint if the Fourth Circuit ruled against them. *Id.* at *4–5.

The *Doherty* court's analysis in certifying its decision for interlocutory appeal was similar. It held that "whether the [PRT] transaction alleged in this case causes the type of harm or injury required to confer Article III standing" is a "purely legal question" on a controlling issue because reversal would terminate the action. 2025 WL 3204436, at *1. Like the court in *Konya*, the *Doherty* court held that "[t]he differing conclusions reached by federal courts . . . demonstrates the substantial grounds for differences of opinion." *Id.* at *2. Finally, immediate review could materially advance the litigation: a finding that plaintiffs lack standing would end the case, while a finding that they have standing "would narrow the potential issues the parties must litigate and the Court must decide during the pendency of th[e] litigation, and eliminate some repetitive pre-trial briefing." *Id.*

The decisions in *Bueno*, *Camire*, and *Schoen*—in which the courts found that plaintiffs lacked standing—are on direct appeal to the Second, D.C., and Third Circuits, respectively. *Bueno*, No. 26-2051 (2d Cir.); *Camire*, No. 26-7035 (D.C. Cir.); *Schoen*, No. 26-3161 (3d Cir.).

## ARGUMENT

This Court should certify its Order with respect to both Article III standing and Count IV for interlocutory appeal under 28 U.S.C. § 1292(b). Certification is appropriate where: (1) the decision being appealed "involves a controlling question of law"; (2) there is "substantial ground for difference of opinion"; and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Court's Order readily satisfies all three elements.

This Court should also enter partial final judgment as to AT&T pursuant to Fed. R. Civ. P. 54(b). Entry of partial final judgment is appropriate "where the trial court's ruling disposes completely of all claims against a given defendant, where the overlap among various legal and factual issues is minimal[,] and where the equities strongly favor immediate, partial judgment." *Bixby v. Town of Rehoboth*, 744 F. Supp. 3d 96, 99 (D. Mass. 2024) (citation modified), *appeal voluntarily dismissed sub nom. Bixby v. Oliveira*, 2025 WL 763674 (1st Cir. Jan. 16, 2025). That is precisely the circumstance presented here.

### I. The Court's Standing Decision Should Be Certified, as Multiple Other Circuits Have Recognized.

#### A. The Order Involves a Controlling Question of Law.

Whether Plaintiffs sufficiently alleged Article III standing is a controlling question of law, meaning reversal either would terminate the action, *Philip Morris Inc.*, 957 F. Supp. at 330, or "might save time for the district court, and time and expense for the litigants," *Simmons v. Galvin*, 2008 WL 11456109, at *3 (D. Mass. Jan. 16, 2008) (quoting 16 Wright, Miller, & Cooper, *Federal Practice & Procedure* § 3930). "[A] controlling question typically implicates a pure legal principle that can be resolved without extensive consultation to the record and commonly involves a question of the meaning of a … constitutional provision." *Waters v. Day*

*& Zimmermann NPS, Inc.*, 2020 WL 4754984, at *2 (D. Mass. Aug. 14, 2020) (Gorton, J.) (quotation marks omitted).

"Standing is generally a controlling question of law in that if a plaintiff is found to lack standing, the action will be dismissed." *Pacamor Bearings, Inc. v. Minebea Co.*, 892 F. Supp. 347, 361 (D.N.H. 1995); *see also Atrion Networking Corp. v. Marble Play, LLC*, 31 F. Supp. 3d 357, 359 (D.R.I. 2014) ("There can be no doubt that the issue of whether this Court has subject matter jurisdiction" is a controlling question because "a lack thereof would bring these proceedings to a brisk halt."). That is precisely the case here. If the First Circuit reverses this Court's ruling on standing, it will end this action.

Plaintiffs' standing is also "a purely legal question." *Waters*, 2020 WL 4754984, at *2. At issue is whether an alleged increase in risk associated with an annuity supports a cognizable Article III injury. As in *Waters*, that question "is an unqualified constitutional issue which requires no extensive consultation to the record or questions of fact." *Waters*, 2020 WL 4754984, at *2. Rather, standing turns solely on whether Plaintiffs' alleged injury is cognizable under controlling legal precedents, including *Thole*, 590 U.S. 538. Thus, two courts in parallel PRT cases have already concluded that whether the type of PRT alleged "in this case causes the type of harm or injury required to confer Article III standing" is a "purely legal question." *Doherty*, 2025 WL 3204436, at *1; *see Konya*, 2025 WL 2050997, at *4 (standing issue "poses a pure question of law" that "the court of appeals can decide quickly and cleanly" without "delv[ing] beyond the surface of the record in order to determine the facts" (quotation marks omitted)).

Finally, weighing further in support of certification under Section 1292(b), this case presents a controlling question of law that "also may be important to other cases." 16 Wright &

Miller's Federal Practice & Procedure § 3930 n.25 (3d ed. 2026); *see Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (courts "may properly consider the system-wide costs and benefits of allowing the appeal"). Here, where district courts across the country have reached starkly differing conclusions as to plaintiffs' standing in similar cases—and where another district court in this Circuit is considering the same issue, *see* n.2 *supra*—appellate resolution of the issue will provide much-needed clarity. The first prong of Section 1292(b) is therefore satisfied.

**B. There Is a Substantial Ground for Difference of Opinion Regarding Whether Plaintiffs Have Article III Standing.**

The second factor is satisfied where, as here, "the matter involves 'one or more difficult and pivotal questions of law not settled by controlling authority.'" *Philip Morris Inc.*, 957 F. Supp. at 330 (quoting *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)). A marked split of authority leaves "no question that the relevant question of law presents a substantial ground for difference of opinion." *Waters*, 2020 WL 4754984, at *3 (granting interlocutory appeal due to a split among district courts). "Such a split clearly constitutes a substantial difference of opinion." *Id.*; *see Canty v. Old Rochester Reg'l Sch. Dist.*, 54 F. Supp. 2d 66, 77 (D. Mass. 1999) (a "stark division" among circuit courts "certainly demonstrates a sufficient difference of opinion"). A "clear disagreement between district courts, coupled with the likelihood that the same question will be decided differently in other courts, provides an adequate basis to meet the second prong of the § 1292(b) analysis." *Konya*, 2025 WL 2050997, at *4.

In cases challenging the adequacy of a PRT annuity provider, the district courts are deeply divided on the question of standing, having split 5 to 4 on the issue (including this Court). *See Maneman*, 2026 WL 884985, at *9 (recognizing that different "district courts have read

*Thole* differently and reached disparate conclusions regarding standing in similar cases"). This demonstrates the type of disagreement among district courts that warrants an interlocutory appeal. And this Court recognized that whether plaintiffs have standing is "a close question." ECF No. 143 at 3.

Notably, the *Konya* court found the second prong of the § 1292(b) analysis satisfied when just "two district courts to address the issue of whether similar allegations of potential injury establish Article III standing answered the question differently." 2025 WL 2050997, at *4. Likewise, the *Doherty* court held that "[t]he differing conclusions reached by federal courts on a closely-related legal issue [of PRT plaintiffs' standing] demonstrates the substantial grounds for differences of opinion." 2025 WL 3204436, at *2. Since then, five additional courts (including this one) have decided the issue of plaintiffs' standing in virtually identical cases and reached divergent conclusions. *See supra* pp. 4–8. "Such a split clearly constitutes a substantial difference of opinion." *Waters*, 2020 WL 4754984, at *3. And, although five district court orders are now on direct or interlocutory appeal, no court of appeals has yet decided the question of standing in this context.

For these reasons, there is a substantial ground for difference of opinion regarding Plaintiffs' standing, and the second prong of the Section 1292(b) analysis is satisfied.

**C. An Immediate Appeal Will Materially Advance Termination of the Litigation.**

"[T]he requirement that an appeal must materially advance the final resolution of the case is 'closely tied' to the controlling question of law component of the analysis." *Courtemanche v. Motorola Sols., Inc.*, 793 F. Supp. 3d 279, 284 (D. Mass. 2025) (quoting *Meijer, Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312, 315 (D. Mass. 2017) (Gorton, J.)). "This condition is met if overturning the Court's decision advances the final resolution of the case." *Id.* Further, even

where an appeal would not terminate litigation in its entirety, it nevertheless "would materially advance the termination of litigation if 'interlocutory reversal might save time for the district court, and time and expense for the litigants.'" *Waters*, 2020 WL 4754984, at *2 (quoting *Simmons*, 2008 WL 11456109, at *3).

The requirement that an immediate appeal will materially advance termination of the litigation is met here, as the *Konya* and *Doherty* courts have already recognized in parallel cases. *Konya*, 2025 WL 2050997, at *4–5; *Doherty*, 2025 WL 3204436, at *2. If the First Circuit holds that Plaintiffs have not plausibly alleged standing and reverses this Court's Order, that decision would dispose of all remaining claims and terminate the action. And, even if the First Circuit were to agree that Plaintiffs have standing, its ruling would still substantially affect the litigation, including by clarifying the issues to be litigated at later stages. Because "subject matter jurisdiction may not be waived," SSGA Trust Co. may later re-raise Plaintiffs' lack of standing. *Sovereign Bank v. Bowditch Boat Holdings, LLC*, 376 F. Supp. 2d 3, 5 (D. Mass. 2005) (Gorton, J.). So even if the First Circuit agrees with the Court that Plaintiffs have adequately alleged standing, its ruling would substantially affect the litigation by defining the issues the parties must address in assessing standing at later stages of the proceedings. *See Konya*, 2025 WL 2050997, at *4–5; *Doherty*, 2025 WL 3204436, at *2 ("[E]ven if the Second Circuit agrees [that plaintiffs have standing], [it] would narrow the potential issues the parties must litigate and the Court must decide during the pendency of this litigation, and eliminate some repetitive pre-trial briefing."). Such a result would "save time for the district court, and time and expense for the litigants." *Waters*, 2020 WL 4754984, at *2 (quoting *Simmons*, 2008 WL 11456109, at *3). The third prong of the Section 1292(b) analysis is therefore also met.

## II. The Court's Ruling as to Count IV Should Also Be Certified.

SSGA Trust Co. further requests that the Court certify its ruling denying the motion to dismiss as to Count IV. Certification of this additional issue will both serve the goals of Section 1292(b) and result in significant efficiencies in light of Plaintiffs' accompanying Rule 54(b) request.

To start, Count IV presents a controlling question of law under Section 1292(b). Count IV is Plaintiffs' sole remaining Count following this Court's Order on the motion to dismiss. Thus, if the First Circuit affirms this Court's standing determination but reverses as to Count IV, the litigation will end. *See Philip Morris Inc.*, 957 F. Supp. at 330 (certifying appeal under Section 1292(b) where "affirmance of this Court's decision will probably not advance the termination of this litigation, but a reversal would"). And, as with standing, whether Plaintiffs have stated a claim for breach of the duty of prudence against SSGA Trust Co. is a pure question of law to be decided solely on the face of the pleadings. *See Waters*, 2020 WL 4754984, at *2. For much the same reasons, certification of the Court's Order as to Count IV will materially advance the ultimate termination of the litigation. *See Philip Morris Inc.*, 957 F. Supp. at 330 (recognizing that the "requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law"). As noted, if the First Circuit reverses the Court's ruling as to Count IV, then the litigation will end. Even if the First Circuit does not reverse as to Count IV, the First Circuit's analysis will provide significant guidance to this Court on remand. *See, e.g.*, *Bank of New York v. Hoyt*, 108 F.R.D. 184, 188 (D.R.I. 1985) (recognizing that "controlling" means "serious to the conduct of the litigation, either practically or legally").

Certification is particularly appropriate because the parties are simultaneously asking this Court to enter a Rule 54(b) judgment on the dismissal of Plaintiffs' claims against AT&T. If the

Court grants that request, the First Circuit will be tasked with reviewing much of this Court's underlying merits ruling, separate and apart from the standing determination. It would be far more efficient for the First Circuit to consider Count IV in the same appeal. Absent certification of Count IV under Section 1292(b), the First Circuit could be asked to review a subset of Plaintiffs' claims in this appeal, only to be asked later to review an additional, closely related claim in a separate appeal. In light of the unique posture of this case, it makes little sense to leave Count IV behind while the First Circuit reviews what is, in effect, the rest of the litigation.

## III. The Court Should Enter Final Judgment as to AT&T.

### A. Legal Standard

Fed. R. Civ. P. 54(b) confers discretion on this Court to enter "final judgment as to one or more but fewer than all claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); *see Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). The Rule "is designed to balance the need for the timely adjudication of important issues that arise early in a case with the long-settled and prudential policy against the scattershot disposition of litigation." *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 28 (1st Cir. 2022) (citation modified).

"When contemplating Rule 54(b) certification, a trial court first must ensure that the ruling underlying the proposed judgment is final." *Nystedt*, 700 F.3d at 29. Then the Court must expressly determine that there is no just reason to delay entry of final judgment, given "(1) any interrelationship or overlap among the various legal and factual issues involved in the dismissed and the pending claims, and (2) any equities and efficiencies implicated by the requested piecemeal review." *Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*, 78 F.3d 698, 706 (1st Cir. 1996).

**B. The Court's September 28, 2026 Order Is Final as to AT&T.**

The first requirement under Rule 54(b) is inarguably met. The Court's Order granting AT&T's motion to dismiss the Amended Complaint disposed of all claims against AT&T. *Nystedt*, 700 F.3d at 29 (concluding finality requirement "plainly satisfied" where order granting motion to dismiss disposed of all claims against some defendants); *Amyndas Pharms.*, 48 F.4th at 28 (same).

**C. There Is No Just Reason to Delay Entry of Final Judgment as to AT&T.**

The interests of "sound judicial administration" and the "equities involved" both support entry of partial final judgment. *Curtiss-Wright Corp.*, 446 U.S. at 8 (citation modified). First, the issues implicated by an appeal of the Court's Order dismissing AT&T are distinct from the issues pending in the case against SSGA Trust Co. Second, the equities favor allowing immediate appeal, because all parties support entry of final judgment here, and expedited resolution of the legal issues concerning AT&T would support efficient administration of Plaintiffs' underlying claims of fiduciary breach.

First, the Court's dismissal of claims against AT&T implicates distinct issues not relevant to the pending claim of fiduciary breach against SSGA Trust Co., which is a subject of the Section 1292(b) portion of this Motion. The R&R concluded that the Amended Complaint "plausibly alleged a breach of a fiduciary duty, leading to the selection of Athene." R&R at 4. But the R&R found that AT&T could not be held liable for that alleged breach because "[t]here are no factual allegations to suggest that the AT&T Defendants were directly involved with the selection process" and the Amended Complaint had not sufficiently alleged that AT&T acted as a fiduciary in deciding "to go forward with a PRT," *id.* at 53–54, and the Court granted dismissal of AT&T on that basis. ECF No. 186 at 7–8. The question presented by an appeal of the Court's

dismissal of AT&T, therefore, is whether AT&T acted as a fiduciary or a settlor in the Athene transaction.

In contrast, the question pending in this Court is whether SSGA Trust Co.—hired as an independent fiduciary for purposes of the Athene transaction, *see* ECF No. 150 at 2–3—breached its duties to Plaintiffs. The facts relevant to the question on appeal—*e.g.*, AT&T's alleged involvement in the selection of Athene and its monitoring of SSGA Trust Co.—are not relevant to the question of SSGA Trust Co.'s alleged breach on the merits, which concerns substantive issues regarding Athene's suitability as an annuity provider. *Compare* R&R at 33–38 (recounting allegations in Amended Complaint relevant to fiduciary breach) *with id.* at 50–57 (reviewing allegations relevant to AT&T's fiduciary status).

Further, the issue of AT&T's fiduciary status implicates questions of law that are ripe for appellate review and have no overlap with the factual issue of fiduciary breach. The R&R reasoned that AT&T could not be directly liable for any fiduciary breach because AT&T hired SSGA Trust Co. as an independent fiduciary and "investment manager" under ERISA responsible for selecting an annuity provider. R&R at 49–50. Plaintiffs' arguments that AT&T could not delegate its fiduciary responsibilities consistent with ERISA and that SSGA Trust Co. does not qualify as an "investment manager" under the statute raise predicate legal questions distinct from the merits of Plaintiffs' allegations of fiduciary breach. *See* 29 U.S.C. §§ 1341(b)(3) (plan administrator responsible for choosing annuity provider), 1105(d) (allowing delegation of fiduciary duties to "investment manager"), 1002(38) (defining "investment manager"). "[I]mmediate resolution" of those legal questions "will determine whether a joint trial [against AT&T and SSGA Trust Co. for breach of fiduciary duties] is feasible." *Amyndas Pharms.*, 48 F.4th at 29 (concluding there was no just reason to delay appeal of dismissal of

subset of defendants on predicate issue of contract interpretation, noting issue was distinct from the merits of the underlying claim).

Moreover, immediate appeal of AT&T's dismissal would permit AT&T to raise the question of Article III standing (alongside SSGA Trust Co., which raises this issue as part of the Section 1292(b) portion of this Motion), facilitating prompt resolution at the appellate level of an issue pending in numerous other district and appellate courts. *Supra* pp. 6–7. The issue of Plaintiffs' constitutional standing is likewise distinct from the pending merits of the case and therefore appropriate for immediate appeal. *See, e.g.*, *Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d 102, 108 n.3 (1st Cir. 2016) (affirming entry of final judgment on order dismissing defendant for lack of personal jurisdiction, as jurisdictional issue rested on "legal grounds distinct from the factual questions of liability").

Second, the equities favor allowing immediate appeal. Immediate appeal would not prejudice the rights of any party, and here *all parties* support entry of final judgment as to AT&T. *Cf. Nystedt*, 700 F.3d at 30 (noting as relevant to the equities that district court found no prejudice to any party); *Feliz v. United States*, 272 F.R.D. 299, 302 (D. Mass. 2011), *aff'd sub nom. Feliz v. MacNeill*, 493 F. App'x 128 (1st Cir. 2012) (concluding that there was no just reason for delay where parties submitted joint stipulation in favor of entry of final judgment). Indeed, all parties would benefit from prompt appellate resolution of threshold questions of standing and fiduciary status that would clarify the viability and scope of Plaintiffs' pending claims on the merits. *Cf. DeLia v. Verizon Commc'ns, Inc.*, 682 F. Supp. 2d 58, 60 (D. Mass. 2010), *aff'd*, 656 F.3d 1 (1st Cir. 2011) (directing entry of final judgment on summary-judgment ruling, noting that appeal would not prejudice any party and would instead avoid prejudice to defendant forced to wait until after trial for final judgment already determined to be warranted);

*Feliz*, 272 F.R.D. at 302 (opining that entry of final judgment as to dismissed defendant was in the interest of all parties because if dismissal were overturned, defendant could be "fully [brought] into the case before it is tried").

Prompt appellate resolution of the issues raised by the Court's dismissal of AT&T is in the interest of judicial economy as well. Waiting until the ultimate disposition of the case against SSGA Trust Co. to review AT&T's dismissal from the case risks that dismissal later being overturned, potentially resulting in duplicative discovery, class, and merits proceedings. *See, e.g.*, *McEwen v. Nat'l Rifle Ass'n of Am.*, 2022 WL 2073354, at *2 (D. Me. June 9, 2022) (determining that there was no just reason to delay entry of final judgment on dismissal of defendant from case because appellate resolution of statutory interpretation issue undergirding dismissal would potentially "avoid duplicative discovery and preliminary class proceedings" and "ensure one cohesive proceeding that encompasses all of the various class/subclass claims"); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021) (affirming entry of final judgment on dismissal of some defendants from consolidated action, as the "relatedness of [plaintiffs'] four cases, their early stage in litigation, the number of defendants involved, and the substantial discovery to be had" were circumstances "warrant[ing] appellate review" in service of efficiency); *In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 397 (S.D.N.Y. 2003) (explaining that judicial economy favored entry of final judgment on motion to dismiss ruling in favor of one defendant to avoid "a second trial and duplicative discovery [] hav[ing] to take place as to the erroneously dismissed defendant").

## CONCLUSION

For these reasons, this Court should (1) certify its September 28, 2026 Order denying in part SSGA Trust Co.'s motion to dismiss for interlocutory appeal pursuant to 28 U.S.C.

§ 1292(b) and (2) enter partial final judgment on its ruling granting AT&T's motion to dismiss pursuant to Fed. R. Civ. P. 54(b).

Dated: November 18, 2026

Respectfully submitted,

*/s/ James O. Fleckner*
James O. Fleckner
Alison V. Douglass
Benjamin S. Reilly
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel: (617) 570-1000
Fax: (617) 523-1231
JFleckner@goodwinlaw.com
ADouglass@goodwinlaw.com
BReilly@goodwinlaw.com

*Counsel for State Street Global Advisors Trust Company and Denise R. Sisk*

*/s/ Meaghan VerGow*
O'MELVENY & MYERS LLP
Meaghan VerGow (*pro hac vice*)
Brian D. Boyle (*pro hac vice*)
Shannon M. Barrett (*pro hac vice*)
1625 Eye Street, NW
Washington, DC 20006–4001
Tel: (202) 383–5300
Fax: (202) 383–5414
mvergow@omm.com
bboyle@omm.com
sbarrett@omm.com

O'MELVENY & MYERS LLP
William Pollak (*pro hac vice*)
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 326–2000
Fax: (212) 326–2061
wpollak@omm.com

NUTTER, McCLENNEN & FISH LLP
Ian D. Roffman, BBO# 637564
Mark C. Jensen, BBO# 646662
155 Seaport Blvd.
Boston, MA 02210
Tel: (617) 439–2000
Fax: (617) 310–9000
iroffman@nutter.com
mjensen@nutter.com

*Counsel for the AT&T Defendants*

/s/ *Cyril Smith*
Cyril V. Smith*
ZUCKERMAN SPAEDER LLP
100 E. Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 949-1145, (410) 659-0436 (fax)
csmith@zuckerman.com

/s/ *Rebecca Tweedie*
Rebecca Tweedie*
ZUCKERMAN SPAEDER LLP
2100 L Street N.W., Suite 400
Washington, D.C. 20037
(202) 778-1896, (202) 822-8106 (fax)
rtweedie@zuckerman.com

/s/ *Edward Stone*
Edward Stone*
EDWARD STONE LAW P.C.
175 W. Putnam Ave., 2nd Floor
Greenwich, CT 06830
(203) 504-8425, (203) 348-8477 (fax)
eddie@edwardstonelaw.com

/s/ *Elizabeth Hopkins*
Elizabeth Hopkins
HOPKINS ERISA LAW
12123 Laurel Terrace Dr.
Studio City, CA 91604
(301) 938-7516
hopkinserisalaw@outlook.com

/s/ *Jerome Schlichter*
SCHLICHTER BOGARD LLP
Jerome J. Schlichter, MO No. 32225*
Sean E. Soyars, MO No. 57317*
Kurt C. Struckhoff, MO No. 61873*
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115, (314) 621-7151 (fax)
jschlichter@uselaws.com
ssoyars@uselaws.com
kstruckhoff@uselaws.com

/s/ *Douglas Brooks*
Douglas S. Brooks, MA Bar No. 636697
Elizabeth N. Mulvey, MA Bar No. 542091
LIBBY HOOPES BROOKS & MULVEY, P.C.
260 Franklin St.
Boston, MA 02110
(617) 338-9300
(617) 338-9911
dbrooks@lhbmlegal.com
emulvey@lhbmlegal.com

*Attorneys for Plaintiffs*
* appearing *pro hac vice*

**CERTIFICATE OF SERVICE**

I, James O. Fleckner, certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 18, 2026.

Dated: November 18, 2026

/s/ *James O. Fleckner*
James O. Fleckner